No. 89-012

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

_____

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

PAUL ANTHONY HEINRICH,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Seventh Judicial District,
             In and for the County of Richland,
             The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. Douglas Alexander, Sidney, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Patricia J. Schaeffer, Asst. Atty. General, Helena
        Victor G. Koch, County Attorney; Phillip Carter, Deputy,
        Sidney, Montana

_____

Submitted on Briefs:  Dec. 14, 1989

Decided:  February 14, 1990

Filed:

_____
             Clerk

Honorable Joel G. Roth, District Judge, delivered the Opinion of the Court.

The defendant appeals his conviction of felony assault from the District Court of the Seventh Judicial District, Richland County. During the jury trial, the trial court admitted evidence of other crimes committed by the defendant. The defendant, on appeal, contends that by admitting said evidence prejudicial error was committed which requires reversal. We agree.

## PRE-TRIAL PROCEEDINGS

As the result of a reported shooting incident on August 11, 1987, at the defendant's trailer house near Sidney, Montana, and the subsequent investigation, the Richland County Attorney on August 17, 1987, filed two criminal charges against the defendant: Count I, alleged assault, a felony, and Count II, alleged criminal possession of dangerous drugs (marijuana), a felony. Count I alleged that the defendant purposely or knowingly caused reasonable apprehension of serious bodily injury in another by use of a weapon when, on or about August 11, 1987, the defendant pointed a revolver in the direction of a vehicle occupied by Henry David LaFever and John P. Knoop and caused Henry David LaFever to believe he might be seriously injured or killed by a shot from the revolver, in violation of § 45-5-202(2)(b), MCA. Count II alleged that on or about August 11, 12 or 13, 1987, or any combination of those three

2

dates, the defendant possessed a dangerous drug by having in his possession more than sixty grams of marijuana, in violation of § 45-9-102(4), MCA.

The defendant pled not guilty to both charges on September 16, 1987, and filed a notice of defense of justifiable use of force as to the assault charge.

The State on October 30, 1987, gave its written notice of intent to introduce evidence of other crimes (commonly referred to as the Just notice). Pursuant to the Just notice, the State sought a pretrial ruling from the trial judge which would allow the State to offer evidence of three other crimes committed by the defendant. The Just notice described the evidence would be: (1) a July 27, 1983, offense of criminal possession of dangerous drugs, a felony, to which the defendant pled guilty on November 16, 1983 (offered to prove the defendant's motive, intent, absence of mistake or accident in the instant drug charge); (2) a July 29, 1983, offense of intimidation, a felony, for which the defendant was sentenced on January 4, 1984 (offered to prove defendant's motive, intent, preparation, plan, absence of mistake or accident in the instant assault charge); and (3) evidence of the seizure of dangerous drugs in defendant's trailer house on August 12, 1987 (offered to prove defendant's motive, intent, absence of mistake or accident and to disprove defendant's claim that the drugs belonged to another person in the instant drug charge).

The defendant's attorney moved on February 11, 1988, to exclude the evidence of the other crimes. The defendant's motion to exclude and the State's _Just_ notice were heard by the trial court on the morning of the first day of the jury trial, March 7, 1988.

The jury trial commenced on March 7, 1988. The roll call of the summoned jurors was completed and the pre-voir dire panel was seated in the jury box. The prospective jurors were then excused and the defendant changed his plea to guilty to Count II, criminal possession of dangerous drugs, a felony. After questioning the defendant, the trial judge accepted the guilty plea. There is no appeal from the defendant's conviction of Count II.

The State's _Just_ notice and the defendant's opposition thereto were then argued to the trial court. The judge denied the defendant's motion to exclude the other crimes evidence and allowed the State to offer evidence of the defendant's 1983 drug conviction and 1983 intimidation conviction and the evidence of the August 12, 1987, seizure of marijuana at the defendant's trailer house and evidence of the August 13, 1987, seizure of the bag of marijuana thrown from the defendant's car. The reasoning of the trial judge was that the evidence of the other crimes would go to prove the motive of the defendant in assaulting Henry LaFever with the revolver. The motive was to scare and intimidate Henry LaFever because the defendant thought Henry LaFever was telling the Sidney

4

law enforcement people that he (the defendant) was in possession of and dealing in dangerous drugs. Additionally, the evidence of the other crimes would go to rebut the defendant's asserted defense of justifiable use of force for self-defense.

The trial then proceeded with the voir dire of the jury panel, the exericse of peremptory challenges, the opening statements of counsel and the presentation of evidence.

## THE EVIDENCE AT TRIAL

Twelve witnesses testified at trial (including the defendant) and certain documents and items of physical evidence were admitted. The evidence established the following chain of events.

On August 11, 1987, about 4:45 p.m., Henry LaFever and John Knoop drove in LaFever's Chevy pick-up truck to the defendant's trailer house which was located near Sidney, Montana, in Richland County. LaFever intended to confront the defendant about rumors that he (the defendant) had been spreading around town that LaFever called the police on him (the defendant) for possessing or dealing dangerous drugs. When LaFever and Knoop arrived at the defendant's trailer house, no one was there. A few minutes later they observed the defendant's 1967 black Camaro approaching the trailer house on the gravel road. The Camaro pulled into the yard and stopped. The occupants of the Camaro were the defendant (driving) and passengers

5

Gisele LaFever (Henry's sister who was also the girlfriend of the defendant) and Robert Wagner.

Wagner testified that LaFever said, "Get out of the car. I'm going to kill you, you little bastard." LaFever testified, "I asked him [the defendant] why he'd been spreading around town that I'd called the police on him." The defendant testified that he suspected LaFever of telling the police that he (the defendant) was dealing drugs and he told that to LaFever during the ensuing fight. LaFever grabbed the defendant around the neck as the defendant was getting out of his car and threw him on the ground and banged his head on the ground. A wrestling match resulted between the two men which lasted for a few minutes with LaFever getting the best of the defendant. LaFever is 6' tall and weighs about 180 to 200 pounds, while the defendant is 5'7" and weighs about 135 pounds. Wagner picked up a piece of pipe to assure that Knoop would not enter the fracas. While the two men were wrestling on the ground, Gisele grabbed her brother by the hair and told him to stop and to leave.

Henry LaFever backhanded Gisele across her face. The defendant broke away from Henry and ran into the trailer house where he obtained a .22 caliber Ruger Bearcat revolver from his dresser and came back outside. In the meantime, Henry LaFever and Knoop were in the process of getting into LaFever's truck to leave. There was conflicting evidence about whether the defendant ever pointed the revolver at LaFever or Knoop or the truck. Two shots

were fired by the defendant. Some of the testimony was to the effect that the defendant was pointing the revolver in the direction of the truck when the shots were fired. Other testimony was that the defendant pointed the revolver upward toward the sky when he fired the two shots. There were no bullet holes found in LaFever's truck and no one was injured by the shots. There was conflicting testimony about whether or not LaFever was wearing a knife on his belt. The defendant testified that he did not use the gun to intimidate LaFever about informing on him but rather the defendant shot the revolver to drive LaFever and Knoop off. The defendant testified that he was trying to convey a message to LaFever that he had a gun and it was loaded and if LaFever came back to hurt him he had some protection.

Immediately after LaFever and Knoop left, the defendant told Gisele to go to the neighbor's house and call the sheriff. She did, and shortly thereafter Deputy Richland County Sheriff Charles Greenough arrived at the trailer house. He asked the defendant, Gisele and Wagner to write out statements of what had occurred. Greenough learned from the three that LaFever had assaulted the defendant. Nothing was said about defendant's use of the revolver. Greenough then went to Knoop's house and took statements from both Knoop and LaFever. From them he learned that a revolver had been fired by the defendant.

Deputy Greenough knew that the defendant was on parole from the Montana State Prison and so he contacted Jack Fasig, the local parole officer, and informed Fasig of the fact that the defendant had fired a gun. Because it was a violation of the defendant's parole conditions for him to possess a gun and the location of the gun was unknown, Fasig obtained a search warrant for the gun from the local justice of the peace on August 12, 1987. The search warrant authorized a search of the defendant's trailer house and his two vehicles. During the evening of August 12, 1987, Fasig and Greenough went to the defendant's trailer house (no one was there) and searched for the revolver. They did not find it. However, they did find (and seize) in the trailer house marijuana roaches, a marijuana cigarette, marijuana seeds and drug paraphernalia (a pipe).

During the morning of August 12, 1987, Gisele went to the Sidney police and to the county attorney to discuss the fight. There was a dispute in the testimony about whether or not the defendant was with her at the police station and at the county attorney's office.

Later the same morning (August 12), the defendant, Gisele and Wagner drove to a town about seventy miles from Sidney to take Wagner to a carnival where he was working. The defendant and Gisele returned to Sidney later that night and were spotted by police officer John Dynneson about midnight. Dynneson knew there

8

was a search warrant outstanding for the gun and so he reported the sighting to Greenough. Greenough contacted Fasig who said he was on his way.

Greenough and Bill Anderson, a jailer, left by car to find the defendant's car (the Camaro). They found it and stopped the defendant. The defendant was driving and Gisele was a passenger. Greenough told the defendant that Fasig had a search warrant for the car to search for the gun and that Fasig was on his way. Greenough asked the defendant to give him the gun if he had it, and the defendant opened the truck of the car voluntarily and produced the holstered revolver and placed it on the top of the car trunk as ordered by Greenough. Fasig had not yet arrived and it was cold so Greenough allowed the defendant and Gisele to get back into the car. The defendant and Gisele sat in the car about fifteen minutes and then unexpectedly and without permission from Greenough drove away quickly. The holstered revolver fell off the trunk and was retrieved by Anderson who then with Greenough gave chase. Fasig arrived about that time and both cars then pursued the defendant's car for three or four miles but were unable to catch the car. However, during the chase, Greenough observed the defendant's car stop momentarily and then continue on. After Greenough lost the defendant's car, he returned to the place on the road where he had seen the defendant stop and found a bag of marijuana near the road.

Upon inspection of the .22 caliber Ruger Bearcat revolver, there were six cartridges in the cylinder; four live rounds and two empty rounds.

During Greenough's pursuit of the defendant's car, Greenough contacted the sheriff's office in McKenzie County, North Dakota, for assistance in stopping the defendant. Later on August 13, 1987, North Dakota Deputy Sheriff Lloyd Clock found the defendant's car empty and locked at a well site and reported the same to Greenough. The defendant's car was impounded and towed into Sidney.

During the chase of the defendant's car and when the car momentarily stopped, not only was the bag of marijuana thrown out, but the defendant got out and hid in the bushes while Gisele drove off. Gisele, after abandoning the car at the well site, went to a friend's house and stayed there. A few days later the defendant telephoned her and Gisele then borrowed a car, picked up the defendant and they left the Sidney area. The defendant was later apprehended in the borrowed car in Park City, Montana.

## EVIDENCE OF OTHER CRIMES

During the trial and over the continuing objections of defendant's lawyer, evidence was admitted about the other crimes committed by the defendant. The trial judge gave the cautionary instruction as the evidence was presented and also gave it as a

final instruction as required by the _Just_ case. Fasig testified about executing the search warrant for the revolver at the defendant's unoccupied trailer house on August 12, 1987. Although the revolver was not found, Fasig testified about finding and seizing marijuana roaches, a marijuana cigarette, marijuana seeds and drug paraphernalia (a pipe).

Also during trial, Greenough testified about finding the bag of marijuana (containing over 200 grams) along the side of the road where the defendant had momentarily stopped on August 13, 1987.

It is to be noted that the defendant had pled guilty to the drug charge at the beginning of this trial. There was no need for the State to present evidence relating to the drug charge as the defendant had admitted his possession of dangerous drugs.

If the marijuana evidence of August 12 and August 13 was somehow related to the assault charge (which we do not accept), it was not admissible as "prior" crimes evidence because the assault occurred on August 11, 1987. It would be "subsequent" crimes evidence and clearly not admissible under State v. Just (1979), 184 Mont. 262, 602 P.2d 957. We fail to understand how the August 12 and August 13 marijuana evidence is similar to the assault offense or how it tends to establish a common scheme, plan or system. As indicated above, the August 12 and August 13 marijuana evidence was "subsequent" to and not "prior" to the assault. We hold that the _Just_ requirement of nearness in time relates to other crimes or

wrongs committed "prior" to the offense for which the defendant is being tried. The prejudice to the defendant by allowing the post-assault marijuana evidence to be admitted to prove the assault offense is obvious and is not harmless.

Also during the trial, Fasig testified about the defendant's July 27, 1983, dangerous drug offense and his conviction thereof. In applying the four factors set out in the Just case to this prior crimes evidence, we consider the similarity of it to the present assault charge and find no similarity; the nearness in time of the 1983 drug conviction to the 1987 assault and find over four years intervened; the tendency of the 1983 drug conviction to establish a common scheme, plan or system and find no common scheme, plan or system. The prejudice to the defendant by admitting the prior 1983 drug conviction when it does not satisfy the four factors test of the Just case is evident and is not harmless error.

Finally, during the trial, both Fasig and witness Loren James Lowry testified about the defendant's July 29, 1983, felony intimidation offense. The testimony was to the effect that the defendant had intimidated a person named Steve Herman because the defendant thought Herman had informed (about having drugs) on either the defendant or the defendant's then common-law wife, Pam Junso. Fasig testified that the defendant had threatened to kill Herman if Herman testified against the defendant in connection with the July 27, 1983, drug offense. Lowry testified that the

12

defendant wanted to know from Herman who had informed on him and there was an altercation between the defendant and Herman (a shoving match) but no fists were swung and no weapon was involved and no threats were made by the defendant. Unfortunately, a certified copy of the intimidation charge and conviction was not made part of the record to clarify whether it was the defendant or the defendant's common-law wife on whom Herman had presumably informed.

Again, applying the four factors of the <u>Just</u> case to the defendant's 1983 intimidation offense, we find the similarity of the intimidation offense to the present assault charge to be lacking (the victims in the two offenses were different, no weapon was used in the intimidation offense whereas a revolver was used in the assault, and the defendant sought out Herman in 1983 whereas LaFever sought out the defendant in the present assault offense); the 1983 intimidation offense was over four years prior to the present assault charge; and the 1983 intimidation offense does not tend to establish a common scheme, plan or system. The prejudice to the defendant in allowing the 1983 intimidation evidence is clear and is not harmless.

Rule 404(b) of the Montana Rules of Evidence provides:

> Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other

purposes, such as proof of motive, oppor-
tunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident.

The Just case requires that the trial judge consider the
proposed other crimes evidence at a pretrial hearing in light of
the four factors set forth in Just: similarity of crimes; nearness
in time; tendency to establish a common scheme, plan or system; and
that the probative value of the other crimes evidence is not
substantially outweighed by prejudice to the defendant. Other
cases discussing the required Just case analysis are State v. Case
(1980), 190 Mont. 450, 621 P.2d 1066, and State v. Hansen (1980),
187 Mont. 91, 608 P.2d 1083, aff'd after remand, 633 P.2d 1202, 38
St.Rep. 1541.

In light of our discussion above, we conclude that the trial
judge erred in his pretrial ruling which would permit the State to
present the other crimes evidence, and there was prejudicial error
when the other crimes evidence was admitted during trial.


CONCLUSION

This case is an example of the State presenting other crimes
evidence which does not satisfy the strict requirements of the Just
decision. The admission of other crimes evidence is the exception
and not the rule. The defendant was prejudiced by the other crimes
evidence allowed into evidence in this case and his conviction of

14

felony assault is reversed. This cause is remanded to the District Court of the Seventh Judicial District.

_____
Hon. Joel G. Roth, District Judge,
sitting in place of Justice R. C.
McDonough, who deems himself dis-
qualified.

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Hon. Ted L. Mizner, District
Judge, sitting in place of Justice
Diane G. Barz, who deems herself
disqualified.

15

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 89-012

STATE OF MONTANA,                        )
                                         )
         Plaintiff and Respondent,       )
                                         )
     v.                                  )     O R D E R
                                         )
PAUL ANTHONY HEINRICH,                   )
                                         )
         Defendant and Appellant.        )

On February 14, 1990, this Court entered its Opinion in this appeal.

On February 23, 1990, the State of Montana filed a petition for rehearing and a response to the petition for rehearing was filed by appellant on March 27, 1990. The Court having considered the petition for rehearing and response thereto,

IT IS ORDERED:

1. The following paragraph beginning at line 14 on page 11 of the Opinion of the Court is hereby deleted:

> If the marijuana evidence of August 12 and August 13 was somehow related to the assault charge (which we do not accept), it was not admissible as "prior" crimes evidence because the assault occurred on August 11, 1987. It would be "subsequent" crimes evidence and clearly not admissible under State v. Just (1979), 184 Mont. 262, 602 P.2d 957. We fail to understand how the August 12 and August 13 marijuana evidence is similar to the assault offense or how it tends to establish a common scheme, plan or system. As indicated above, the August 12 and August 13 marijuana evidence was "subsequent" to and not "prior" to the assault. We hold that the Just requirement of nearness in time relates to other crimes or wrongs committed "prior" to the offense for

1

which the defendant is being tried. The prejudice to the defendant by allowing the post-assault marijuana evidence to be admitted to prove the assault offense is obvious and is not harmless.

2. The following paragraph shall be inserted in the Opinion of this Court in place of the paragraph above-deleted:

We fail to understand how the August 12 and August 13 marijuana evidence is related or similar to the assault charge or how it tends to establish a common scheme, plan or system. The prejudice to the defendant by allowing the August 12 and 13 marijuana evidence to be admitted to prove the assault offense out-weighs its probative value and is not harm-less.

3. On page 9, line 10, of the Opinion "truck of the car" should read "trunk of the car."

4. Let remittitur issue forthwith.

DATED this _18th_ day of April, 1990.

_____
Hon. Joel G. Roth, District Judge,
sitting in place of Justice R. C.
McDonough

We concur:

_____
Chief Justice

2

_John Conway Harrison_

_[signature]_

_William E. Hunt Sr._

_John C. Sheehy_
_____
Justices

_[signature]_
_____
Hon. Ted L. Mizner, District
Judge, sitting in place of
Justice Diane G. Barz