Nos. 89-559 and 89-613

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

Plaintiff and Appellant,

vs.

WILLIAM CHARLES CHRISTENSEN,

Defendant and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Hon. Leif B. Erickson, Judge presiding (No. 89-559)

District Court of the Ninth Judicial District,
In and for the County of Glacier
The Hon. R. D. McPhillips, Judge presiding (No. 89-613)

COUNSEL OF RECORD:

For Appellant:

Hon. Marc Racicot, Attorney General, Helena, Montana
James Yellowtail, Asst. Atty. General, Helena, Mont.

(89-559): Ted Lympus, Flathead County Attorney;
Ed Corrigan Deputy County Attorney, Kalispell, Montana

(89-613): James C. Nelson, Glacier County Attorney, Cut
Bank, Montana

For Respondent:

Stephen J. Nardi, Sherlock & Nardi, Kalispell, Montana

Submitted: June 12, 1990

Decided: August 9, 1990

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

The Montana Attorney General filed this consolidated appeal to orders by the Eleventh Judicial District Court, Flathead County, and the Ninth Judicial District Court, Glacier County, excluding evidence of the respondent's marijuana growing operations because the evidence resulted from private felonious conduct, burglary, and was prejudicial other-crimes evidence. We reverse.

## ISSUES

The State of Montana raises the following issues.

1. Were the respondent's constitutional rights violated by the issuance of search warrants based in part upon information revealed by felonious private conduct?

2. Did the District Courts err in holding that even in the absence of a constitutional violation, the exclusionary rule applies to illegal evidence resulting from felonious private conduct?

3. If the evidence resulting from the burglary is suppressed, did the Glacier County officials have sufficient independent information to establish probable cause to search the East Glacier property?

4. Did the Glacier District Court err in excluding evidence of the Flathead County drug activity as prejudicial other-crimes evidence?

## FACTS AND PROCEDURE

In April of 1989, Kalispell City Police arrested Charles Tappan, Blake Davis, and Patrick Looney for possession and sale of

2

marijuana. Tappan and Davis told the police that the drugs came from the respondent's marijuana growing operation at his Kalispell residence. Jim Morrison, a friend of Tappan and Davis, had worked for the respondent but was fired for stealing a pound of marijuana and for having an affair with the respondent's common law wife. Morrison subsequently convinced Tappan and Davis to burglarize the respondent's residence and steal a portion of the marijuana crop. Tappan and Davis also disclosed that the respondent may have had a similar operation in East Glacier. The Kalispell Police passed this information on to Glacier County law enforcement officials.

The Glacier officials already suspected a growing operation at the respondent's East Glacier residence, but had not yet applied for a search warrant. A neighbor had informed the police that she believed the respondent was growing marijuana because of the smell around his boarded-up and locked garage, the lack of snow on the roof in the winter, and the suspiciously heavy and periodic traffic around his house. Investigating officers confirmed the citizen's report and, after procuring a subpoena, found that the respondent's power bills were high and bore no particular relationship to the weather.

The information disclosed by Tappan and Davis led to the present charges. Relying on that information to establish probable cause, the Kalispell and Glacier police obtained search warrants for the respondent's Kalispell and East Glacier residences. Both searches produced substantial evidence of marijuana growing operations. The Flathead County Attorney filed an information in

the Eleventh Judicial District Court charging the respondent with Criminal Possession of Dangerous Drugs with Intent to Sell, § 45-9-103(1), MCA, and Conspiracy to Commit Criminal Sale of Dangerous Drugs, §§ 45-4-102(1) and 45-9-101(1), MCA. The Glacier County Attorney filed an information in the Ninth Judicial District Court charging the respondent with Criminal Sale of Dangerous Drugs, § 45-9-101(1), MCA, and Conspiracy, § 45-4-102(1), MCA.

Several pretrial motions by the respondent and orders by both courts followed the charges. The Glacier County Attorney notified the respondent, pursuant to State v. Just (1979), 184 Mont. 262, 602 P.2d 957, that he intended to introduce evidence of the Kalispell operation. The respondent answered with a motion in limine to exclude the other-crimes evidence as violative of the Just guidelines. The respondent also filed a separate motion asking the Glacier County District Court to suppress the evidence obtained through the search warrant because the warrant was the result of felonious conduct by private individuals. The respondent filed a similar motion to suppress in the Flathead County District Court and the court granted the motion. The Glacier County District Court then granted the respondent's motion to suppress and granted the respondent's motion in limine to exclude the other-crimes evidence. The State now raises a consolidated appeal to the orders by both courts.

## CONSTITUTIONAL VIOLATIONS

Both parties agree that the burglary occurred without the

4

encouragement, consent, or knowledge of the police, and, therefore, did not violate the respondent's right to privacy. See generally State v. Long (1985), 216 Mont. 65, 71, 700 P.2d 153, 157 (holding "the privacy section of the Montana Constitution contemplates privacy invasion by state action only").

The respondent asserts that the State's acceptance and retention of the burgled marijuana violates his privilege against self-incrimination and his right to due process. We decline to address this assertion. The respondent cites no authority and provides no explanation to support his statement. Furthermore, we can envision no theory of law or reason which would require the State to reject and return illegal drugs seized during a lawful arrest.


## THE EXCLUSIONARY RULE AND PRIVATE FELONIOUS CONDUCT

The principal issue in this appeal is whether private felonious conduct is subject to the exclusionary rule even though that conduct does not entail a constitutional violation.

This issue is the direct result of a question reserved in State v. Long. In Long, the defendants' landlord committed misdemeanor trespass by entering their rental property where he discovered a grow-light shining on 657 marijuana plants. Based on the landlord's information, the Yellowstone County Sheriff's Office obtained a search warrant, seized the plants, and arrested the defendants. The District Court, however, granted the defendants' motion to suppress the evidence because it resulted from the

5

landlord's criminal conduct. Long, 216 Mont. at 66-67, 700 P.2d at 154.

In reversing the district court's order, this Court used a two-part analysis. We determined first whether the defendants' right to privacy had been violated and then determined whether in the absence of such a violation, the exclusionary rule should nonetheless be applied because the evidence resulted from the landlord's misdemeanor conduct. On the first issue, we held that Montana's right to privacy prohibited only invasions by state action. Long, 216 Mont. at 71, 700 P.2d at 157. In doing so, we overruled a long line of cases upholding the unique Montana rule that searches by private individuals violated the defendants' right to privacy under Article II, Section 10, Montana Constitution. Long, 216 Mont. at 69, 700 P.2d at 156. On the second issue, we held that the exclusionary rule did not apply because it does not deter the procurement of illegal evidence by private individuals who are not schooled in the rules of evidence. Long, 216 Mont. at 71, 700 P.2d at 157.

Although in Long we found no reason to apply the exclusionary rule to evidence resulting from the landlord's misdemeanor trespass, we expressed a concern based on the silver platter doctrine and the imperative of judicial integrity that some private searches might warrant use of the exclusionary rule. Long, 216 Mont. at 71-72, 700 P.2d at 157-58. The silver platter doctrine was a response by the United States Supreme Court to a loophole in the early exclusionary rule. See State v. Van Haele (1982), 199

6

Mont. 522, 526-28, 649 P.2d 1311, 1313-14; overruled on other grounds, Long, 216 Mont. at 69, 700 P.2d at 156. In Weeks v. United States (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the Supreme Court held that the exclusionary rule applied to evidence revealed by unreasonable searches and seizures conducted by federal officials, but also held that the rule did not apply to state officials because the Fourth Amendment, at that time, did not extend to the states. Weeks, 232 U.S. at 398, 34 S.Ct. at 346, 58 L.Ed. at 657-58. As a result, federal officials routinely circumvented the exclusionary rule by accepting evidence illegally obtained by state officials and served up on a "silver platter" to federal prosecutors. In Elkins v. United States (1960), 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, the Supreme Court addressed this problem by holding that evidence obtained by state officials by methods which, if used by federal officials, would have violated the defendant's Fifth Amendment rights, was inadmissible in federal criminal proceedings. Elkins, 364 U.S. at 223, 80 S.Ct. at 1447, 4 L.Ed.2d at 1681. In extending the exclusionary rule, the Supreme Court relied in part on the imperative of judicial integrity. That imperative expresses the fear that if the courts use illegally obtained evidence, they would condone and encourage the illegal activity, and thereby breed contempt for the laws which they are sworn to uphold. Elkins, 364 U.S. at 222-23, 80 S.Ct. at 1447, 4 L.Ed.2d at 1680-81. Following Elkins the Supreme Court filled out the current scope of the exclusionary rule by holding that it also applied to the admission in state courts of illegal evidence seized

by state officials. Mapp v. Ohio (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090.

The Supreme Court's decisions left open the possibility that the exclusionary rule might be applied to evidence obtained by private individuals who, acting without the state's knowledge, illegally seized evidence and then served it up to government prosecutors. Such private actions would not entail a constitutional violation because they do not entail state action. The exclusionary rule, however, is a judicially created remedy and not a personal constitutional right. Stone v. Powell (1976), 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067, 1083. It may, therefore, be used in the absence of a constitutional violation. In Long we raised the possibility of such an application, but declined to employ the rule against evidence resulting from private misdemeanor conduct. We did, however, "reserve for another day the determination of whether to apply the exclusionary rule to evidence gathered as the result of felonious conduct." Long, 216 Mont. at 72, 700 P.2d at 158.

With the present case, that day has come. Both District Courts excluded the evidence resulting for the burglars' disclosures because of the concerns this Court expressed in Long. The respondent now argues that use of the challenged evidence will tarnish the prestige of the courts and encourage neo-vigilantism. He asserts that use of the evidence would encourage private citizens to circumvent the exclusionary rule by acting on their own initiative to illegally seize evidence and then serve it up to

state and federal prosecutors. The respondent's arguments awaken the image of spectral horsemen riding forth from Virginia City to enforce law and order in our communities, but leaving in their dust the trampled remnants of the constitution.

We disagree with the respondent's assessment. The prospect of serving time along with their victims should be enough to discourage private citizens from conducting felonious searches. More importantly, the burglars in this case had no intention of serving up illegal evidence to state prosecutors; they stole the drugs for their own purposes. Use of this evidence by the District Courts would not condone or encourage other thefts from drug operations. To the contrary, failure to admit highly probative evidence of a major drug operation produced by legitimate law enforcement practices would undermine public confidence in the judicial system. See Stone, 428 U.S. at 490-91, 96 S.Ct. at 3050-51, 49 L.Ed.2d at 1086. Furthermore, exclusion of this evidence solely because it was the result of private felonious conduct would result in the exclusion of accomplice testimony which is now routinely admitted.

Even if the burglars had taken the marijuana with the intention of turning it over to state prosecutors, the exclusionary rule would still not apply to the evidence. The universal rule under both state and federal constitutions is that the exclusionary rule does not apply to evidence resulting from the actions of private individuals unless those individuals are acting as agents of the state. See e.g. United States v. Jacobsen (1984), 466 U.S.

109, 113-14, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94; Coolidge v. New Hampshire (1971), 403 U.S. 443, 487, 91 S.Ct. 2022, 2048-49, 29 L.Ed.2d 564, 595; United States v. Black (9th Cir.), 767 F.2d 1334, 1339, cert. den. 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985); State v. Smith (Wash. 1988), 756 P.2d 722, 727, cert. den. _____ U.S. _____, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989); Commonwealth v. Robinson (Mass. 1987), 503 N.E.2d 654, 658; State v. Johnson (Idaho 1986), 716 P.2d 1288, 1291; Commonwealth v. Corley (Pa. 1985), 491 A.2d 829, 831. Most courts reason that wholly private actions do not trigger the exclusionary rule because the state and federal constitutions guarantee only against unreasonable searches and seizures by the state.

Even though the exclusionary rule could be applied to evidence resulting from illegal private conduct, the courts have uniformly refused to do so because it would serve no purpose. The exclusionary rule is meant to deter police from using illegal and unconstitutional methods of gathering evidence. As this Court noted in Long, 216 Mont. at 71, 700 P.2d at 157, the exclusionary rule does not deter the actions of private individuals who have no understanding of the rule's application. See also Gajdos v. State (Ind. 1984) 462 N.E.2d 1017, 1021; United States v. Coles (D. Me. 1969), 302 F.Supp. 99, 103; United States v. Masterson (S.D. N.Y), 251 F.Supp. 937, 940, cert. den. 385 U.S. 833, 87 S.Ct. 72, 17 L.Ed.2d 67 (1966).

For these reasons, we believe that Montana should join all other jurisdictions in refusing to apply the exclusionary rule to

10

evidence resulting from private action. We, therefore, hold that the exclusionary rule does not apply to evidence resulting from the conduct of private individuals, even if felonious, unless that conduct involves state action.

## THE GLACIER COUNTY SEARCH WARRANT

The State argues that, even if the disclosures of the burglars are excluded, evidence resulting from the Glacier County search warrant should not be suppressed because the Glacier officials had sufficient independent evidence to establish probable cause to search the respondent's East Glacier residence. Since we hold that the burglars' statements are not subject to the exclusionary rule, we need not address this issue.

## OTHER-CRIMES EVIDENCE

The State asserts that the Glacier County District Court erred in granting the respondent's motion in limine to exclude evidence of the Flathead County drug operation from the Glacier County prosecution. The Glacier County District Court ruled that, as other-crimes evidence, the prejudicial effect of the Flathead County information outweighed its probative value.

The law governing other-crimes evidence is well settled. Under Rule 404(b), M.R.Evid., evidence of other crimes or wrongful acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. State v. Just imposes four factors in determining the

admissibility of other-crimes evidence: similarity of the crimes; nearness in time; tendency to establish a common scheme, plan or system; and whether the probative value of the evidence is substantially outweighed by the prejudice to the defendant. State v. Heinrich (Mont. 1990), 788 P.2d 1346, 1350, 47 St.Rep. 314, 320. Evidence of acts which are part of the corpus delicti of the crime charged are not subject to the Just requirements.

> Evidence of acts which are inextricably or inseparably linked with the crime charged is admissible without regard to the rules governing "other crimes" evidence.

State v. Romero (1986), 224 Mont. 431, 438, 730 P.2d 1157, 1162.

The State argues first that the Flathead County evidence is not other-crimes evidence, but is admissible as an inextricable and inseparable part of the corpus delicti of the Glacier County operation. According to the State, the respondent was conducting a single growing operation in two different locations.

We disagree with the State's argument. While the Flathead and Glacier Counties operations were nearly identical operations carried out by the same individuals, the similarity of crimes is not the test of whether they fall within the same corpus delicti. The issue is whether the evidence of the Flathead County drug operation is inextricably or inseparably linked to the Glacier County operation. We hold that it is not. The State has not shown that a jury could not fully comprehend the crimes charged in Glacier County without reference to the Flathead County evidence.

The State argues in the alternative that if the Flathead County evidence does not fall under the corpus delicti exception,

12

it is still admissible under the _Just_ rules. The respondent does not seriously contest the State's assertion that the crimes charged in Flathead and Glacier Counties are similar, contemporaneous, and tend to establish a common scheme, plan or system. The only question is whether, as the Glacier County District Court held, the probative value of the Flathead County evidence is substantially outweighed by its prejudice to the defendant.

That question cannot be answered at this stage of the proceedings. The State has appealed from pretrial orders. Because the case has not gone to trial, the record has not been sufficiently developed to allow a determination of the probative value of the evidence. The State has not explained why the Flathead County evidence is necessary to prove the respondent's guilt of the crimes charged in Glacier County. In the recent case of State v. Heinrich this Court held that the district court erred in failing to grant the defendant's pretrial motion to exclude other-crimes evidence because the evidence was clearly prejudicial and had no probative value. _Heinrich_, 788 P.2d at 1350-51, 47 St.Rep. at 320.

In the present case, the other-crimes evidence is closely related to the crimes charged. The same people and the same equipment were apparently involved in both operations. The Flathead County evidence may be both relevant and probative in the Glacier County trial.

We, therefore, overrule the Glacier County District Court's order to exclude the other-crimes evidence and allow the case to

13

proceed under the _Just_ guidelines. However, we add this caveat; if the prosecution has sufficient evidence to establish guilt of the Glacier County crimes without the Flathead County evidence which falls within the _Just_ definition of other-crimes evidence, introduction of such evidence raises an unnecessary risk of reversal due to prejudice to the defendant.

## CONCLUSION

The Eleventh Judicial District Court's order suppressing the results of the Flathead County search warrant is reversed. The Ninth Judicial District Court's orders suppressing the results of the Glacier County search warrant and excluding evidence of the Flathead County operation are also reversed. Both cases are remanded to the respective District Courts for further proceeding consistent with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____

14

_____

_____

_____
Justices

15

Justice William E. Hunt, Sr., dissenting:

I dissent. The District Courts were correct when they granted defendant's motions in limine and held that the preservation of judicial integrity necessitates the application of the exclusionary rule to all evidence seized illegally as the result of either state or private action.

Regarding the exclusionary rule, the United States Supreme Court has said:

> If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means--to declare that the Government may commit crimes in order to secure the conviction of a private criminal--would bring terrible retribution.

Elkins v. United States, 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669, 1681 (1960).

This Court has adopted the Elkins rationale and applied it to private action:

> [U]nreasonable or illegal intrusions knowingly accepted and used, from the private sector by the government amount to an extension of the silver platter doctrine condemned by Elkins, particularly when viewed in the light of judicial integrity emphasized in Elkins. (Emphasis in original.)

State v. Coburn, 165 Mont. 488, 503, 530 P.2d 442, 450 (1974).

Judicial integrity necessitates that the exclusionary rule extend to the activities of private citizens who, in obtaining evidence, violate the criminal laws. This type of exclusion preserves judicial integrity.

As I said in my dissent in State v. Long, 216 Mont. 65, 84, 700 P.2d 153, 165 (1985):

16

Montana has rightfully placed privacy paramount to any illegal public or private intrusion. The constitutional delegates knew Montana when they wrote:

"The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Mont. Const. art. II, § 10.

This has been the law and should remain the law without exception or qualification.

It is no favor to judicial integrity to use an incident of an illegal intrusion as a substitute for due process. The majority of this Court now allows the trespasser and the snoop to do work properly assigned to lawfully constituted law enforcement. We should leave law enforcement to those legally and rightfully entrusted with that task. It is not an injustice to society to apply the exclusionary rule to private searches. . . . Law enforcement should be left to law enforcement officers who are not only trained to apprehend the wrongdoer but, just as importantly, to respect the rights of all Montana citizens including what was, before the majority opinion, the constitutional right to privacy.

Crooks as well as trespassers and snoops should be outlawed from doing the work of legally constituted law enforcement officers.

The private citizen generally knows what types of activities are legal or illegal. If private citizens are allowed to knowingly break the laws, and the government reaps the benefits from such activity, does not the government essentially become the perpetrator? If the government is allowed to use evidence that was illegally seized, does not the government become like the recipient of stolen goods?

A recipient of stolen goods is criminally responsible when he or she knowingly "obtains control over stolen property knowing the property to have been stolen by another" with the purpose of

depriving the owner.  Section 45-6-301(3)(a), MCA.  In this case, the government received stolen property knowing it was stolen.  It should be forced to obey the very laws that it is to uphold.

I would affirm the District Courts.

_____
Justice

Justice John C. Sheehy:

I concur in the dissent of Justice Hunt.

_____
Justice

18