No. 92-074

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BRUCE PAUL CAMERON,

Defendant and Appellant.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James A. Manley, Attorney at Law, Polson, Montana

For Respondent:

Scott Spencer, Lincoln County Attorney, Libby,
Montana

FILED

OCT 6 - 1992

Filed: Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: July 23, 1992

Decided: October 6, 1992

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

A jury trial was held in the District Court for the Nineteenth Judicial District, Lincoln County. Defendant, Bruce Paul Cameron, was found guilty of criminal sale of dangerous drugs in violation of § 45-9-101, MCA. Defendant appeals. We reverse.

The issues for our consideration are:

1. Did the District Court properly allow the State to introduce evidence of a prior bad act as rebuttal evidence?

2. Did the District Court properly allow the State to introduce evidence of another drug sale which took place the day prior to the offense charged in the information as part of the corpus delicti?

From September of 1990 to May of 1991, the Lincoln County Sheriff's Department conducted an extensive undercover drug operation in the Libby area. Rodney Reynolds (Reynolds) was arrested for illegal drug activities and subsequently agreed to participate in the undercover operation in exchange for a suspended sentence.

On May 3, 1991, Reynolds telephoned an acquaintance, Pat Grotjohn (Grotjohn). Grotjohn told him that he knew where he could obtain some cocaine and Reynolds drove to Grotjohn's residence. Reynolds was wearing a transmitter which was monitored by the Sheriff's deputies. Reynolds testified that he told Grotjohn that he wanted to buy an "eight ball", which is the street term for three and one-half grams of cocaine. Grotjohn told him it would cost $240.

2

The two men drove away in Reynold's car. Grotjohn dropped off Reynolds at a drive-in restaurant and drove off alone in Reynold's car to obtain the cocaine. The Sheriff's deputies lost sight of the Grotjohn vehicle. When Grotjohn returned to pick up Reynolds, he completed the sale of the cocaine to Reynolds for the agreed price.

The next day, on May 4, 1991, Reynolds went to Grotjohn's residence to buy cocaine, again wearing a transmitter. This time a deputy followed Grotjohn. The deputy testified he saw Grotjohn turn off the main road and drive up near defendant's house. However, he further testified that because his vision was blocked by trees and shrubs, he could not see more. The deputy drove slowly past the turnoff, and as he did, he saw Grotjohn get out of the car. Because he did not want to be spotted, the deputy drove by, then stopped, but could not see where Grotjohn went. Grotjohn remained in the area for about one hour between noon and one p.m.

Grotjohn was ultimately arrested for the two sales to Reynolds. However, he agreed to testify against defendant in return for one felony charge of sale of dangerous drugs being dropped.

At trial, Grotjohn testified that defendant sold him cocaine inside defendant's residence both on May 3rd and May 4th. Grotjohn testified that defendant's vehicle was at the residence on both occasions. There was no audio or visual surveillance of the alleged transactions between Grotjohn and defendant. Grotjohn was the only witness who testified that defendant sold him the drugs

3

which he eventually resold to Reynolds.

Defendant was charged with one count of criminal sale of dangerous drugs based on the May 4th transaction. However, over objection, the State was allowed to present the Grotjohn testimony on the alleged transaction of May 3rd.

At trial defendant testified that he and a friend went "four-wheeling" on May 4th. He testified that they were gone from about 9:30 a.m. to 5:00 p.m. Defendant's friend testified and corroborated defendant's story. Defendant's neighbors testified that they saw him leave his residence that morning and did not see him return until late afternoon.

At the beginning of the trial, the defense moved in limine to exclude evidence of a gun threat that allegedly occurred months before the alleged drug transaction which is the subject of this appeal. The District Court granted the motion in limine and ruled that the gun threat testimony could be introduced only if Grotjohn's credibility was attacked.

In rebuttal, the State was allowed to recall Grotjohn. The State argued that Grotjohn's credibility had been attacked, and therefore, to bolster Grotjohn's credibility, Grotjohn was allowed to testify that defendant had threatened Grotjohn with a rifle two or three months before the alleged drug transaction took place. The defense objected prior to the testimony and moved for a mistrial after the testimony was allowed. The motion for mistrial was denied. The jury returned a verdict of guilty. Defendant appeals.

4

I

Did the District Court properly allow the State to introduce evidence of a prior bad act as rebuttal evidence?

Defendant maintains that the District Court committed reversible error by allowing testimony regarding the alleged gun threat into evidence. Defendant contends the testimony violated both Rule 404, M.R.Evid., and the Just rule. We agree.

The State emphasized that the defense presented two witnesses who testified that when Grotjohn came to the Cameron residence on May 4, he was acting in a furtive and suspicious manner and contradicted Grotjohn's testimony that he got out of his vehicle at the Cameron residence. The primary argument by the State was that the evidence of the threat with the rifle was corroborative of Grotjohn's credibility because it explained his manner of testifying and demonstrated why he had been unsure on some points because he was fearful.

The State contended that Grotjohn would testify to his fear of the defendant as a result of the threat with a rifle and that such testimony would explain his nervous behavior. However, Grotjohn's testimony did not support the State's contentions.

Grotjohn testified that he was visiting the defendant at the defendant's home when the gun threat took place. He testified that he was "uneasy with the [defendant]," but stayed at defendant's home the rest of the evening. On cross-examination Grotjohn testified that he did not feel threatened by the defendant after that, and that the defendant and Grotjohn remained friends. Last,

5

he testified that the threat had no effect on his conduct even a week later. Grotjohn's testimony effectively eliminated the State's contention that the evidence of the gun threat demonstrated Grotjohn's fear of the defendant. Grotjohn's testimony is not admissible to demonstrate that fear on his part caused him to testify in a particular manner.

The State argues by reference to various Montana cases involving the credibility of the accused. Such cases are not authority for consideration of the credibility of witness Grotjohn. If it was the credibility of Grotjohn that was in question, then the State cannot offer evidence of the defendant's bad character to bolster Grotjohn's credibility. Rule 404, M.R.Evid.

With regard to character of a witness Rule 404, M.R.Evid., refers to Rule 608. That rule provides that the credibility of a witness may be supported by evidence in the form of an opinion or reputation but is subject to the limitations that the evidence may refer only to character for truthfulness or untruthfulness and that evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence. The record does not demonstrate such an attack by opinion or reputation evidence. We conclude that the evidence of the prior bad act was not admissible under the Montana Rules of Evidence.

The gun threat by the defendant against Grotjohn constitutes evidence of other crimes, wrongs or acts, and it is necessary to analyze the same under the Modified Just Rule as provided in State

6

v. Matt (1991), 249 Mont. 136, 814 P.2d 52. <u>State v. Matt</u> modified the <u>Just</u> Rule. The Modified <u>Just</u> Rule provides that in order to introduce evidence of other crimes, wrongs or acts as referred to and described in Rules 404(b) and 403, M.R.Evid:

(1) The other crimes, wrongs or acts must be similar.

(2) The other crimes, wrongs or acts must not be remote in time.

(3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

<u>State v. Matt</u>, 814 P.2d at 56. Furthermore, the Modified <u>Just</u> Rule specifically includes the following procedural protections:

(1) Evidence of other crimes, wrongs or acts may not be received unless there has been <u>written notice</u> to the defendant that such evidence is to be introduced. <u>The notice to the defendant shall specify the evidence of other crimes, wrongs or acts to be admitted, and the specific Rule 404(b) purpose or purposes for which it is to be admitted</u>. (Emphasis added).

(2) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.

(3) In its final charge, the court shall instruct the jury in unequivocal terms that such

7

> evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.

Id. at 56.

We conclude that the threat evidence was not admissible for several reasons under the Modified Just Rule. The State failed to give written notice specifying the evidence to be admitted and the specific Rule 404(b) purposes for which it was to be admitted, and as a result failed to meet the initial procedural protection. In addition, the gun threat evidence failed to meet the first element of the Modified Just Rule because there is no similarity between the alleged gun threat and the charged crime of criminal sale of dangerous drugs. We conclude that the evidence of the prior bad act was not admissible under the Modified Just Rule.

We hold that the District Court committed reversible error in allowing the State to introduce evidence of a prior bad act as rebuttal evidence.

II

Did the District Court properly allow the State to introduce evidence of another drug sale which took place the day prior to the offense charged in the information as part of the corpus delicti?

On the morning of trial, defense counsel presented the District Court with a motion in limine to exclude evidence of the alleged May 3rd drug transaction on the grounds that it was unfairly prejudicial. The District Court allowed evidence of the May 3rd transaction to be introduced as part of the corpus delicti

8

of the crime charged.

The State maintains the evidence was admissible as part of the corpus delicti. It maintains that under State v. Frates (1972), 160 Mont. 431, 503 P.2d 47, evidence of the May 3rd sale was admissible because the sales are so related that proof of one tends to establish the other.

In Frates, defendant was convicted of the sale of 900 LSD tablets to an undercover police officer on March 17, 1971. The State was allowed to prove that on March 9, 1971, defendant came to the Midway Bar and handed an informant a sack containing 100 capsules of LSD for which he was paid $150; and on March 14, 1971, the same defendant returned to the Midway Bar and handed the informant another sack containing 100 LSD capsules. The evidence of these two transactions was the principal assignment of error. In holding that the evidence was admissible, this Court stated:

> The evidence of the two prior sales of LSD to the informer in the instant case is part of the corpus delicti of the crime with which the defendant is charged. It is a part of the totality of events and occurrences leading to and culminating in the sale of the 900 LSD tablets to the undercover police officer of which defendant was convicted. It tends to explain the circumstances leading to the commission of the crime charged, establishes defendant's intent to commit the crime charged, and negatives the defense of entrapment. As such, it is clearly relevant, probative and competent evidence tending to prove the crime charged. . . .

Frates, 503 P.2d at 50. In order that there may be no misunderstanding in future cases, we specifically overrule the foregoing holding in Frates. Our explanation for the overruling will appear in the subsequent discussion of cases which took place after Frates was decided in 1972.

9

In State v. Trombley (1980), 190 Mont. 218, 620 P.2d 367, this Court referred to State v. Jackson (1979), 180 Mont. 195, 589 P.2d 1009, and pointed out that under that case the defendant objected to the introduction of evidence, labeling it inadmissible other crimes evidence. Referring to State v. Jackson this Court then stated:

> In our opinion affirming the District Court's admission of this evidence, we recognized the distinction between "other crimes" evidence and evidence of the defendant's simultaneous misconduct inseparably related to the alleged criminal act.
>
> We recognize the general rule that when a defendant is put on trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that offense alone. Evidence which in any manner shows, or tends to show, he has committed another crime wholly independent, even though it is a crime of the same sort, is irrelevant and inadmissible, . . .
>
> In this case the prosecution did not introduce evidence of other "unrelated" or "wholly independent" crimes. The prosecution only sought to prove that defendant was exercising unauthorized control over various items . . . Defendant's possession of . . . (this other property) was inextricably related to the property referred to in the charging information. We are not, therefore, involved with the introduction of evidence of wholly independent or unrelated crimes. The evidence was properly admitted.
>
> The prosecution here is not required to meet the Just requirements for the introduction of "other crimes" evidence because evidence of defendant's possession and use of the cards is not "wholly independent" or "unrelated" other crimes evidence. (Citations omitted.)

Trombley, 620 P.2d at 368. As is apparent, the standard being applied by this Court had markedly changed from Frates.

In State v. Romero (1986), 224 Mont. 431, 730 P.2d 1157, the defendant asserted that testimony about his activities on the day before he was arrested and about his sales of marijuana to the

10

undercover agent did not meet the requirements of State v. Just.
In response to that contention, in holding that the evidence was
properly admissible, this Court stated:

> Evidence of acts which are inextricably or
> inseparably linked with the crime charged is admissible
> without regard to the rules governing "other crimes"
> evidence. State v. Riley (1982), 199 Mont. 413, 649 P.2d
> 1273, 1279, 39 St.Rep. 1491, 1499. . . . We conclude
> that these prior acts, which occurred a few hours before
> his arrest, are inextricably linked to the charged crime
> of possession of marijuana with intent to sell.
> Therefore, the Just and Jenson requirements do not apply
> to the testimony about Mr. Romero's activities in
> Columbus.

Romero, 730 P.2d at 1162. The clear holding was that evidence of
acts which are inextricably or inseparably linked with the crime
charged are admissible without regard to the other crimes evidence
rules under the Just Rule.

In State v. Ungaretti (1989), 239 Mont. 314, 779 P.2d 923,
this Court referred to the above quoted holding from Romero. In
concluding that the other crimes evidence was introduced merely as
a part of the corpus delicti, the Court stated:

> We conclude there is no question but that the
> activities of the appellant which resulted in her arrest
> in Nevada were inseparable and formed much of the basis
> of the crime charged here. . . .
>
> * * *
>
> In Gillham and Riley, . . . this Court held that the
> State is entitled to Present the entire corpus delicti of
> the charged offense including matters closely related to
> the offense and explanatory of it." The events which
> took place in Nevada supported and explained the State's
> position at trial: that appellant had constructive
> possession of the marijuana while she was in Montana. .
> . . We conclude that the "other crimes" evidence was
> introduced merely as a part of the corpus delicti and
> thus did not constitute reversible error.

11

*Ungaretti*, 779 P.2d at 926.

State v. Christensen (1990), 244 Mont. 312, 797 P.2d 893, is a case somewhat more comparable to our present case. In that case the defendant was charged in two separate counties with marijuana growing operations and the possession and sale of marijuana. The State argued that the evidence from Flathead County was not other crimes evidence and was admissible as an inextricable and inseparable part of the corpus delicti of the Glacier County operation. The State attempted to contend that the defendant was conducting a single growing operation in two different locations. In response to that contention the Court stated:

> We disagree with the State's argument. While the Flathead and Glacier Counties operations were nearly identical operations carried out by the same individuals, the <u>similarity of crimes is not the test of whether they fall within the same corpus delicti</u>. The issue is whether the evidence of the Flathead County drug operation is <u>inextricably or inseparably linked</u> to the Glacier County operation. We hold that it is not. The State has not shown that a jury could not fully comprehend the crimes charged in Glacier County without reference to the Flathead County evidence. (Emphasis added.)

*Christensen*, 797 P.2d at 898. The facts in our present case are similar to this aspect of *Christensen*. Here the only connection between the sales of May 3 and May 4, is that the parties were the same and that cocaine was sold in both instances. However, the State has failed to demonstrate that the evidence of the May 3 sale was in any manner inextricably or inseparably linked to the May 4 sale. Under that circumstance, the evidence is not admissible. As pointed out in *Christensen*, the similarity of crimes is not the test of whether they fall within the same corpus delicti. We

12

further point out that as stated in <u>Ungaretti</u>, the evidence may be admissible if it is closely related to the offense and "explanatory of it." There is nothing presented in the facts of the present case to demonstrate that the May 3 sale is explanatory of the May 4 sale.

We hold the District Court committed reversible error in allowing the introduction of another drug sale which took place the day prior to the offense charged.

We reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

John Conway Harrison

_____

_____

_____
Justices

13

October 6, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


JAMES A. MANLEY
Attorney at Law
201 Fouth Ave. East
Polson, MT 59860

HON. MARC RACICOT, Attorney General
        , Assistant
Justice Bldg.
Helena, MT 59620

SCOTT SPENCER, County Attorney
Lincoln County
512 California
Libby, MT 59923


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
        Deputy