No. 93-226 and 93-061

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,
    Plaintiff and Respondent,

-v-

GREGORY WING,
    Defendant and Appellant.

and

STATE OF MONTANA,
    Plaintiff and Respondent,

-v-

JOHN JACOB LORENZ,
    Defendant and Appellant.

FILED

MAR 22 1994

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Seventh Judicial District,
               In and for the County of Richland,
               The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Katherine M. Irigoin (Lorenz), Habedank, Cumming,
        Best & Savage, Sidney, Montana; Richard L. Burns
        (Wing), Glendive, Montana; William F. Hooks,
        Appellate Public Defender, Helena, Montana (Lorenz
        and Wing on appeal)

        For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Cregg W.
        coughlin, Assistant Attorney General, Helena,
        Montana; Mike Weber, Richland County Atto'rney, Gary
        Ryder, Deputy County Attorney, Sidney, Montana

                        Submitted on Briefs:  December 2, 1993

                                   Decided:  March 22, 1994

Filed:

_____
            Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Gregory Wing (Wing) and John Jacob Lorenz (Lorenz) were jointly tried by a jury in the Seventh Judicial District, Richland County. The jury convicted Wing of one count of sexual intercourse without consent and Lorenz of two counts of sexual intercourse without consent and one count of sexual intercourse without consent by accountability. This opinion consolidates the appeals of Wing and Lorenz from the judgments convicting them of these offenses. Lorenz also appeals a part of the District Court's Judgment and Sentence which designates him a dangerous offender for the purpose of parole eligibility. We affirm in part, reverse in part and remand.

The questions presented for review by both defendants are:

I. Did the District Court abuse its discretion in restricting the defendants' evidence of the victim's past sexual conduct?

II. Did the District Court abuse its discretion by allowing the victim to testify about sexual acts committed by others who were not defendants in this trial?

In addition, defendant Lorenz presents the following additional issues for review:

III. Did the District Court abuse its discretion by restricting defendant Lorenz' cross-examination of the victim?

IV. Did the District Court err in designating defendant Lorenz a dangerous offender for the purpose of parole eligibility?

On the evening of December 12, 1991, Wing telephoned the victim, an 18-year-old high school senior, and asked if she wanted

to attend a party with him that evening. The party was to be held for the occasion of Wing's brother's return to Sidney, Montana after a two-year absence. Although Wing would not tell the victim where the party was to be held, she nonetheless agreed to accompany him.

Instead of going directly to the party, Wing took the victim out of town to a location described as the "Lost Highway" where the two engaged in consensual sexual intercourse and then returned to town. Wing then drove to his parents' home to determine whether his brother had arrived home. The victim waited in the car while Wing went indoors for a short time. Two other men, Mike and Scott Sheehan, were also parked outside the Wing home, waiting to pick up Wing's brother.

Wing took the victim to a house where defendant Lorenz lived with Mike and Scott Sheehan. The two Sheehans and Gary Wing arrived at Lorenz' and the Sheehans' house at approximately the same time as Wing and the victim. Lorenz was already there. Although most of the others at the party were drinking alcoholic beverages, the victim testified that she only consumed a few sips of Lorenz' drink. Other testimony also indicated that she did not drink much alcohol that evening. The victim was the only woman present for most of the evening.

Testimony was presented that some of the men played a drinking game known as "quarters" for approximately thirty minutes. After a time, Scott and Mike Sheehan and Gary Wing went to buy more beer, leaving the victim in the house with Wing, Lorenz, and another

3

individual, Donald Buxbaum.  Testimony was presented that the four of them were in the living room and that both Wing and Lorenz attempted to sexually arouse the victim so that she would engage in consensual sex with them at that time.

The victim testified that she indicated she did not wish to go into the bedroom with Lorenz and Wing, but that they had forced her into the bedroom, one pulling on each of her arms.  She testified that she was crying and told them she did not "want to." According to the victim,  Lorenz pushed her on the bed,  despite her resistance, and then held her arms above her head while Wing pulled off her sweat pants and underwear.  She testified that Wing then penetrated her vaginally while Lorenz attempted to insert his penis in her mouth, and that when Wing completed vaginal intercourse, he held the victim's arms down while Lorenz had vaginal intercourse without her consent.

About the time Lorenz and Wing finished with the victim, the other three men returned from their jaunt to buy beer and came into the bedroom either at or soon after the time Lorenz and Wing left the room.  The victim testified that she struggled with the three men,  still crying,  and told them she wanted to go home, but Gary Wing,  Scott Sheehan and Mike Sheehan then performed oral and vaginal intercourse without her consent.

After the sexual acts, the victim asked Wing to take her home; Wing refused.  Buxbaum, who had not taken part in any of the sexual acts committed upon the victim,  followed her out of the house and gave her a ride home.

Eight days later, on December 20, 1991, two girls at school asked the victim if it was true that she had had sex with five guys at one time.  Following that incident and at the urging of two of her friends, the victim reported the episode to a school counselor. Later the same day, she gave a detailed statement to Sidney Police Officer David Schettine (Schettine).  Schettine initially interviewed and took tape-recorded statements from both Wing and Lorenz.

Wing initially told Schettine that he asked the victim to go to a party and that nothing happened at the party. He later stated that the party essentially ended up in the bedroom with the victim and the other four men, but he denied having sexual intercourse with her on that day--either consensually or nonconsensually. He later changed his story again and advised Schettine that he and the victim had engaged in consensual sex prior to the party and later at Lorenz' house where the three of them engaged in various acts of consensual sex.  He testified at trial that after the sexual activity when the victim came out of the bedroom, she smoked a cigarette and then asked for a ride home.  He further testified that he ignored her and that Lorenz said, "Well, boys, let's have a big round of applause for [the victim]."  He acknowledged lying to Officer Schettine, claiming to have done so because he had a girl friend at the time and he did not want her to find out that he had had sex with someone else.

Lorenz also later changed his initial description of the events of December 12, 1991.  His initial statement was similar to

5

Wing's first recount which denied sexual conduct had occurred. Lorenz later stated that he and Wing and the victim engaged in consensual sexual acts. He also testified that the subsequent sexual acts with the other three men were also consensual. At trial, he admitted that he lied to officer Schettine on two prior occasions, as had Wing, but claimed to have lied because he did not want to discuss the group sex as he thought it might be considered "an unnatural sex act" and he did not know what his rights were "as far as sex." He also admitted that he had previously denied on four separate occasions that he had ever had sex with the victim.

At trial, the victim testified that she had engaged in consensual sexual activities in the past with both Wing and Lorenz. Further testimony was introduced by Lorenz that the victim had engaged in sexual activity on one occasion which involved seven men, one being Lorenz. The victim also admitted this conduct. Lorenz and Wing both testified at trial as to numerous sexual acts engaged in with the victim while others were present and which had occurred prior to the December 12, 1991 party at Lorenz' house.

The jury convicted Wing of one count of sexual intercourse without consent. The District Court sentenced him to eight years in prison with four years suspended, designated him a nondangerous offender for purposes of parole eligibility, and ordered him to complete a sexual offender treatment program. The jury convicted Lorenz of two counts of sexual intercourse without consent and one count of sexual intercourse without consent by accountability. The court sentenced Lorenz to concurrent eight year prison terms on

each of the three counts. The court also determined that Lorenz was a persistent felony offender and sentenced him to an additional consecutive ten year term and ordered him to complete the sexual offender treatment program. Lorenz was designated a dangerous offender for purposes of parole eligibility.

## I.

Did the District Court abuse its discretion in restricting the defendants' evidence relating to the victim's past sexual conduct?

Defendants contend that the court erred in precluding additional witnesses from testifying about separate incidents in which the victim engaged in consensual group sex or in consensual sex with one of the defendants in the presence of at least one other person. They contend that the court's preclusion of this testimony was reversible error because it critically impaired them from presenting their consent defense. They further claim that such evidence was relevant and admissible pursuant to § 45-5-511, MCA, and was intended to corroborate and bolster the defendants' contentions that the sex was consensual.

The District Court allowed a great deal of evidence to be introduced regarding the victim's past sexual activities. One witness, Troy Jones, testified in detail about an incident at the victim's sister's home in which the victim engaged in consensual group sex acts with seven men. Lorenz testified about numerous incidents when he and the victim engaged in consensual sexual intercourse, with and without other participants. He also testified concerning times when other persons were actually in the residence where the sexual events occurred but were not involved in

7

the sexual conduct. Wing testified about the consensual sexual intercourse that he and the victim engaged in on December 12, 1991, prior to going to the party at Lorenz' house. He further testified about numerous prior incidents when he and the victim engaged in consensual sex acts.

Specifically, Wing testified about one incident in the fall of 1990, when he, the victim and Curt Rice (Rice) had driven to a location near Sidney and he and the victim engaged in sexual intercourse while Rice waited in the truck. He claimed that the victim was anxious to "take them both on" but that Rice had declined. Wing also testified that the victim had engaged in oral sex with him in Rice's presence while they returned to town in Wing's pickup truck after that sexual encounter.

Wing's counsel attempted to call Rice to testify about the above-described specific events. Lorenz' counsel also attempted to call other witnesses, whom he claimed could provide testimony about the number of times the victim had sex with him in the presence of others, when they first had consensual sexual intercourse and various dates on which they had consensual sexual intercourse including the first time they had consensual sex.

After allowing much of this testimony about the victim's past sexual conduct, the District Court refused to admit the testimony of additional witnesses concerning the victim's past sexual conduct. Rulings on the admissibility of evidence are left to the sound discretion of the district courts. State v. Stewart (1992), 253 Mont. 475, 479, 833 P.2d 1085, 1087. The scope of our review

8

for trial administration issues is the same. Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 604. Thus, the District Court could properly exclude evidence which is relevant and admissible on other bases.

When Wing attempted to introduce Rice's testimony, the District Court considered the arguments of both counsel and concluded as follows:

> THE COURT: Well, I still think we've gotten to the point where that has been adequately shown, and to go beyond that and start dragging these witnesses in is going to be more prejudicial than it is probative.
> She's admitted the prior contact. She's admitted that it has occurred with more than one party present on some occasions. The defendant [Wing] has testified that it occurred. To start parading these people in is going to be in effect putting the witness on trial, and that's not what we're here for.
> The statute allows examination of prior acts only for the purpose outlined in the statute. Your argument is as to contact with the defendant and to be used for the purpose of showing consent.
> She's admitted the prior contacts and that there was consent, and I think that we're just stretching it out too far to start dragging these people in and saying, "Yeah, I was there, I was there, and I was there."

The court concluded that to bring in other witnesses in addition to the two defendants and Troy Jones to further testify about the victim's past sexual conduct was to go beyond the point of being probative. The court allowed the testimony of Troy Jones regarding the group sex acts at the victim's sister's apartment because there was no indication at the time that Lorenz would testify to it himself.

The statute the District Court referred to in the above quote is known as the "rape shield" statute, § 45-5-511, MCA, and it provides in pertinent part:

9

(2) No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.

The Compiler's Comments to § 45-5-511, MCA, provide that

evidence pertaining to the sexual conduct of the victim is not admissible into evidence at trial. The purpose of this rule is to prevent the trial of the charge against the defendant being converted into a trial of the victim. There are only two exceptions . . . and both go directly to specific conduct which may be at issue in any given case. The first allows the defendant to introduce evidence pertaining to the victim's prior sexual conduct in relation to himself. <u>Thus, if the victim and defendant have been sexually intimate previous to the alleged rape, the defendant may use evidence to this effect.</u> (Emphasis supplied.)

The district courts are "given wide discretion to exclude evidence as cumulative even though it is relevant." State v. Short (1985), 217 Mont. 62, 69, 702 P.2d 979, 983. Rule 403, M.R.Evid., provides a number of rationales for exclusion of otherwise relevant evidence:

Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In <u>Short,</u> this Court emphasized a previous case where the trial court did not abuse its discretion by ruling that repetitious testimony should be excluded under Rule 403, M.R.Evid. Since the defendant in that case had previously testified about the evidence, the court concluded that the probative value of the additional

10

evidence on the same topic as corroborating evidence that the victim had threatened the defendant was substantially outweighed by the factors listed in Rule 403, M.R.Evid. Short, 702 P.2d at 983 (citing State v. Breitenstein (1979), 180 Mont. 503, 591 P.2d 233).

We conclude that the District court did not abuse its discretion in this case by restricting otherwise relevant and admissible evidence of the victim's past sexual conduct which was merely cumulative in nature and which easily could have had the effect of being more prejudicial to the victim than probative to the jury. We conclude that the jury was presented with ample evidence of prior consensual acts between the defendants and the victim from which it could determine without bias the credibility of the defendants' defense that the victim consented to the sexual acts on December 12, 1991. We further conclude that the defendants were not prevented by the court's ruling on cumulative evidence from presenting their consent defense.

We hold the District Court did not abuse its discretion when it restricted the defendants' evidence regarding the victim's past sexual conduct.

II.

Did the District Court abuse its discretion by allowing the victim to testify about sexual acts committed by others who were not defendants in this trial?

As discussed above, the District Court allowed the victim to testify not only to the sexual acts committed by Wing and Lorenz, but also to those committed by Gary Wing, Scott Sheehan and Mike Sheehan. Wing and Lorenz contend that the court abused its

11

discretion by allowing this testimony about other sexual conduct that occurred because it was hearsay and improperly admitted into evidence under the res gestae doctrine and because it was unduly prejudicial in relation to its probative value. Lorenz and Wing further contend that this evidence should have been precluded because the acts they committed were clearly separate from those of the other three defendants as the other three were to be tried in a separate trial.

Contrary to the arguments made by the defendants, Montana allows the introduction of evidence which is part of a single transaction. The concepts embraced by the term res gestae are included within the codification of that common law doctrine in § 26-1-103, MCA, also referred to as the "transaction" rule, which provides as follows:

> **26-1-103. Declaration, act, or omission which is a part of the transaction.** Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction.

Whether an act is referred to as part of the res gestae or as part of the "transaction," that act is evidence which is part of the sane litigated event.

For example, it is well established that evidence which tends to explain circumstances surrounding the charged offense is relevant, probative and competent. When the court is not dealing with the introduction of evidence of wholly independent or unrelated crimes, the evidence is properly admitted. State v. Cameron (1992), 255 Mont. 14, 20, 839 P.2d 1281, 1285. In Cameron,

12

we also pointed out that evidence may be admissible if it is closely related to and explanatory of the offense. Cameron, 839 P.2d at 1287. See also State v. Riley (1982), 199 Mont. 413, 426, 649 P.2d 1273, 1279.

To be admissible, evidence must be relevant, competent and material. These concepts of admissibility are included in Rules 401 and 402, M.R.Evid., relating to relevancy. Generally, evidence is relevant if it logically and naturally tends to establish a fact in issue. State v. Smith (1986), 220 Mont. 364, 376, 715 P.2d 1301, 1308.

> [A]dmissibility is predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which the criminal act occurred. Acts of a defendant subsequent to the alleged commission of the crime, and intertwined therewith, are highly probative. (Citation omitted.)

State v. Moore (1992), 254 Mont. 241, 246, 836 P.2d 604, 607.

We conclude that the victim's testimonial evidence about the sexual acts committed by Gary Wing and Scott and Mike Sheehan was admissible as part of the transaction and as such, the District Court did not abuse its discretion by admitting it because such testimony was relevant according to Rule 402, M.R.Evid., which provides that "[a]ll relevant evidence is admissible."

We further conclude that the testimony objected to here relating to the three other defendants was not hearsay. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted." Rule 801(c), M.R.Evid. The testimony of

13

the sexual conduct of the three other men was not offered into evidence to prove such conduct.

The victim was accessible at trial for full cross-examination by each of the defendants concerning her testimony. The testimony concerning these acts was highly probative and its probative value was not outweighed by prejudice to the defendants. The trial transcript provides evidence of an exhaustive cross-examination of the witness regarding her prior sexual activity, not only with the defendants as allowed by the "rape shield" statute, but also with numerous other persons because of the nature of the group sex activities. Moreover, the District Court cautioned the jury that the acts of the other three men "should have no bearing on your consideration of what these two individuals are charged with and are not to be considered in any of your deliberations." We conclude that the testimony about the sexual acts committed by Gary Wing, Scott Sheehan and Mike Sheehan was admissible under Rule 402, M.R.Evid., and Rule 801(c), M.R.Evid.

We hold the District court properly exercised its discretion by allowing the victim to testify about sexual acts committed by others who were not defendants in this trial.

III.

Did the District Court abuse its discretion by restricting defendant Lorenz' cross-examination of the victim?

Defendant Lorenz contends that the District Court also abused its discretion by precluding his counsel from asking the victim questions directed to specific instances of her prior sexual conduct with Lorenz in the presence of others. At the time Lorenz'

14

counsel objected to the restriction on cross-examination of the victim, the District Court specifically instructed counsel that questions could not be framed so as to presume sexual conduct which had not been testified to in evidence.

The District Court advised counsel as follows:

> THE COURT: . . . The point I'm trying to get across to you is, I will allow your area of questioning. I'd agree with you that it's relevant and the statute allows it. Okay. What I don't want is for you to be questioning this witness presuming facts that are not in evidence. And every time you start your question, "Isn't it true that on such and such a date with such and such a person you did this and this and this," when there's been no testimony that that in fact happened. You can ask in general, "Have you ever had sex with," "From this point on, have you ever done this?" Okay. If she says yes, then you can ask her when and where and with who. And if she says no, then you've got to go to another method of proof. Do you understand what I'm saying?

> MS. IRIGOIN: Although she says yes ----

> THE COURT: Every time you give that question, "Isn't it true that you did on such and such a day with such and such a person present," you're getting into an area where you've already given the jury the statement of fact that has not been shown in any way, shape or form and the question presumes something not in evidence.

We emphasize that it is within the trial court's discretion to exercise reasonable control over the mode in which a party interrogates witnesses. State v. Gommenginger (1990), 242 Mont. 265, 274, 790 P.2d 455, 461. Recently, in State v. McNatt (1993), 257 Mont. 468, 473-74, 849 P.2d 1050, 1054, we held that the right to cross-examine a witness is not absolute, stating:

> Balanced against this right of confrontation is Rule 611(a), M.R.Evid., which provides that the district court has discretion in exercising reasonable control over the mode and order of interrogating witnesses so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless

15

consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Despite the trial court's discretion to exercise reasonable control over the mode of interrogation of witnesses, the exercise of such control must not infringe upon the rights of a party. 81 Am. Jur. 2d _Witnesses_ § 717 (1992). In Gommenginger, we stated:

> [T]he trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the Defendant.

Gommenginger, 790 P.2d at 461 (citing United States v. Tracey (1st Cir. 1982)) 675 F.2d 433, 437.)

The federal courts have said the exercise of reasonable control over the mode and order of interrogating witnesses and presenting evidence encompasses the same purposes as are set forth in Rule 611, M.R.Evid. 81 Am.Jur.2d _Witnesses_ § 717. The exercise of the court's discretion "will not be disturbed unless it has been abused or substantial harm has improperly been done to the complaining party." 81 Am.Jur.2d _Witnesses_ § 717.

The substance of the court's directing the mode of interrogation in this case is the court's refusal to allow counsel for defendant Lorenz to ask questions beginning with, "Isn't it true that . . .," which included facts of actual prior sexual encounters between the defendants and the victim where third persons were also present, such as the following:

> [MS. IRIGOIN]: And isn't it true that during part of those times, or a number of those times, someone else was present while you were having sexual intercourse with your consent with John Lorenz?

16

. . .

> [MS. IRIGOIN]: Didn't you in December of 1990 have sexual intercourse with your consent with John Lorenz with a number of people present?

Essentially, counsel for defendant Lorenz attempted to ask if the witness had had sexual intercourse with her consent at a particular place, at a particular time and with a particular third person present.

We conclude that the District Court erroneously limited the questions on cross-examination to questions based upon facts which had already been established in the record. Our rules do not contain such a limitation. On cross-examination, it is entirely appropriate to ask a question such as: "Isn't it true that on April 24, 1992, the defendant and you had sexual relations?"

Although we conclude that the District Court incorrectly limited the cross-examination, our review of the record discloses that all of the information sought to be disclosed was actually presented in an alternative cross-examination format and, as a result, there was no injury to the substantial rights of Lorenz.

In Montana, an error committed by the trial court against the appellant is harmless error and will not require reversal "unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. Prejudice must not be presumed, but rather must appear from the denial or invasion of a substantial right from which the law imputes prejudice. State v. Newman (1990), 242 Mont. 315, 325, 790 P.2d 971, 977. When assessing the prejudicial effect of an error, this, Court will examine the totality of the

17

circumstances in which the error occurred. Brodniak v. state (1989), 239 Mont. 110, 115, 779 P.2d 71, 74. As noted above, Lorenz' substantial rights were not affected by the District Court's ruling.

We hold that the District Court did abuse its discretion in requiring that defendant Lorenz' cross-examination of the victim be structured in the specific manner explained above, but that the court's control did not constitute reversible error because there was no adverse consequence to the defendant.

IV.

Did the District Court err in designating defendant Lorenz a dangerous offender for purposes of parole eligibility?

Lorenz contends the District Court failed to adequately articulate its reasons for designating him a dangerous offender under § 46-18-404, MCA. In pertinent part, § 46-18-404(1), MCA, provides:

> (1) . . . [T]he sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole under part 2 of chapter 23 if:
>
> (a) during the 5 years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and
>
> (b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender 'does not represent a substantial danger to other persons or society.

The designation of dangerous offender is an important factor in determining parole eligibility for Lorenz as he may not be

18

paroled unless he has served one-half of his full term less any good time he may have accumulated under the provisions of § 53-30-105, MCA. See § 46-23-201(2), MCA.

In State v. Morrison (1993), 257 Mont. 282, 287, 848 P.2d 514, 517, this Court emphasized that the above code section governs the designation of both nondangerous and dangerous offenders and stated:

> The designation of an offender as either nondangerous or dangerous is an important factor in determining parole eligibility. Section 46-18-404, MCA, governs the designation of nondangerous or dangerous offender. In State v. Belmarez (1991), 248 Mont. 378, 381, 812 P.2d 341 343, we stated:
> [A]n individual may be designated a dangerous offender, if, in the discretion of the sentencing court, he is determined to represent a substantial danger to other persons or society; however, more than a mere recital of the statutory language is required. The sentencing court must articulate its reasons underlying its determination.

The key point for the present case is that an individual may be designated as a dangerous offender if he is determined to represent a substantial danger to other persons or society. The District Court here failed to articulate why Lorenz represented a substantial danger to other persons or to society.

At the sentencing hearing in this case, the District Court stated as follows:
> In terms of dangerous or non-dangerous designation, as I read the statute, I can only designate him as a non-dangerous offender if he has not had any felony convictions within the last five years, and so for that reason the designation in this case will be as a dangerous offender since there are two prior felony convictions within the last five years.

The only additional reference to the dangerous offender designation

19

was the following statement in the District Court Judgment and Sentence: "The defendant is designated as a dangerous offender."

In Morrison, 848 P.2d at 517, the Court concluded that where there is substantial evidence to support a court's determination that an offender is dangerous, this Court may remand to the district court for findings to support such a conclusion. We pointed out that without such findings this Court cannot determine whether there is an abuse of discretion. Morrison, 848 P.2d at 517-18.

We conclude the District Court failed to articulate adequate reasons for designating the offender as dangerous as required by § 46-18-404, MCA, and Morrison. We reverse the designation of Lorenz as a dangerous offender and remand to the District Court for additional findings articulating its reasons for a dangerous or nondangerous designation.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

20

Karla M. Gray

William E. Hunt

Justices

March 22. 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Katherine M. Irigoin
Habedank, Cumming, Best & Savage
P.O. Box 1250
Sidney, MT 59270

William F. Hooks
Appellate Public Defender
P. 0. Box 200145, Capitol Station
Helena, MT 59620-0145

Hon. Joseph P. Mazurek
Attorney General
Justice Bldg.
Helena, MT 59620

Gary Ryder
Deputy County Attorney
Richland County courthouse
Sidney, MT 59270


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy