NO.   95-577

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA, ex rel.
JOSEPH P. MAZUREK, ATTORNEY GENERAL,

    Relator,

  v.

DISTRICT COURT OF THE MONTANA FOURTH
JUDICIAL DISTRICT, and the
HONORABLE ED McLEAN, DISTRICT JUDGE,

    Respondent.

FILED

JUL25   1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

ORIGINAL   PROCEEDING

COUNSEL OF RECORD:

    For Appellant:

        Joseph P. Mazurek, Attorney General
        Chris Tweeten, Deputy Attorney General
        Helena, Montana

        Karen S. Townsend, Deputy Missoula County
        Attorney, Missoula, Montana

    For Respondent:

        Michael J. Sherwood, Attorney at Law,
        Missoula, Montana

Submitted on Briefs:   April 18, 1996

Decided:   July 25, 1996

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Petitioner, the State of Montana on relation of Attorney General Joseph P. Mazurek, filed with this Court an application for writ of supervisory control under Article VII, § 2(2) of the Montana Constitution and Rule 17, M.R.App.P. The State's application requests that we address two orders of the Fourth Judicial District Court, Missoula County, granting the motions of defendant Michael Paul Johns (Johns) to admit certain evidence relating to the misconduct of the alleged victims under the Montana Rape Shield Law, § 45-5-511(2), MCA. Defendant Johns also filed a cross-petition for writ of supervisory control.

In its order of April 9, 1996, this Court accepted original jurisdiction over the issues raised by the State in its application for writ of supervisory control, declined to accept jurisdiction over the evidentiary-related issues raised in the cross-petition for writ of supervisory control, and declined original jurisdiction over Johns' request to dismiss certain counts of the amended information.

*Factual and Procedural Background*

At the time of the alleged incidents, Johns and the victims, identified as K.C. and L.A., were students attending the University of Montana-Missoula. Johns is charged with two counts of felony sexual intercourse without consent and two counts of criminal endangerment. These counts arise from two separate incidents involving K.C. and L.A. Johns filed a motion seeking to introduce evidence relating to the prior sexual history of the alleged

victims. Two pretrial hearings have been held in the respondent District Court pursuant to the Montana Rape Shield Law, codified at § 45-5-511(2), MCA. The District Court considered certain evidence relating to the past sexual conduct of K.C. and L.A. and determined that the evidence would be admissible at trial.

The State requests that this Court address the following decisions of the District Court:

> (a) The respondent court intends to admit testimony from a witness named Bob Keissal that he observed L.A. sitting on the lap of, rubbing against, and fondling a person named Brad Becker on the night in which the conduct that is the subject of counts one and three of the amended information occurred.

> (b) The respondent court intends to allow a witness named Ben Graham to testify that L.A. was "hitting on every guy in sight" and sitting on Brad Becker's lap on the night in which the conduct that is the subject of counts one and three of the amended information occurred.

> (c) The respondent court intends to allow a witness named Brad Woons to testify that after the conduct that is the subject of counts one and three of the amended information occurred, L.A. came into his dormitory room, eventually undressed, lay down on a bed in the dormitory room, and appeared to masturbate.

> (d) The respondent court intends to allow a witness named Brian Mothershead to testify from personal knowledge that L.A., while in high school, became intoxicated and spent the night in a motel room, waking up unclothed and wrapped in a blanket in the company of several men the following morning.

> (e) The respondent court intends to allow a witness named Shannon Sims to testify from personal knowledge to the same incident described in (d) above.

> (f) The respondent court intends to allow witnesses Daryl and Jean Toews to testify that K.C. made and recanted false allegations of sexual assault against Chad Reddig.

This Court accepted jurisdiction over the issues raised in the

3

State's petition for writ of supervisory control.

This Court has stated that:

> "Supervisory control is an extraordinary remedy, to be exercised only in extraordinary circumstances. We have s a i d that to justify such a writ an exigency or emergency must be shown to exist, or that a gross injustice would result from a denial of the writ, and the absence of other adequate relief. . . [Supervisory control] has its own appropriate functions, and, without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the [district] courts where those courts are proceeding within their jurisdiction, but by mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal or the remedy by appeal is inadequate. . "

State ex rel. Forsyth v. District Court (1985), 216 Mont. 480, 484, 701 P.2d 1346, 1348 (quoting State ex rel. O'Sullivan v. District court (1946), 119 Mont. 429, 431-32, 175 P.2d 763, 764); accord State ex rel. Mapes v. District Court (1991), 250 Mont. 524, 528-29, 822 P.2d 91, 94. In our order of April 9, 1996, we determined that this case implicates such "extraordinary circumstances" as are contemplated in Forsyth and Manes, and, consequently granted the State's petition. The State correctly notes that § 46-20-103, MCA, provides the scope of issues from which the State may appeal in a criminal case and that evidentiary rulings under the Rape Shield Law, § 45-5-511(2), MCA, are not included. See State ex rel. Dep't of Justice v. District Court (1977), 172 Mont. 88, 93, 560 P.2d 1328, 1331 (discussing the appropriateness of the writ in the absence of an adequate remedy at law). Therefore, if the District Court erroneously admits this evidence at trial, the State has no adequate remedy on appeal.

In addition, the State asserts that the Rape Shield Law was

4

enacted to protect victims from further trauma at trial by restricting the admissibility of evidence relating to the victim's prior sexual conduct. Once a trial is held and the testimony has been presented in open court, the injury which the statute is intended to prevent will have been inflicted upon the victim. A later decision of this Court would be wholly ineffective in rectifying the injury to the victim. For these reasons we granted the State's petition for writ of supervisory control.

*Discussion*

In reviewing a district court's decisions regarding the admissibility of evidence relating to the extrinsic sexual conduct of sexual assault victims under § 45-5-511, MCA, we determine whether the district court abused its discretion. State v. Howell (1992), 254 Mont. 438, 445, 839 P.2d 87, 91, cert. *denied, 507* U.S. 1036 (1993); State v. Rhyne (1992), 253 Mont. 513, 518-19, 833 P.2d 1112, 1116. The State argues that the District Court's rulings on the admissibility of the testimony labeled as issues (a) through (f) violate Montana's Rape Shield Law. Section 45-5-511, MCA, the Rape Shield Law, provides in relevant part:

> (2) No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.

> (3) If the defendant proposes for any purpose to offer evidence described in subsection (2), the trial judge shall order a hearing out of the presence of the jury to determine whether the proposed evidence is admissible under subsection (2).

5

The State asserts, and we agree, that the statute recognizes only two instances in which the sexual conduct of a victim may be admitted and that neither circumstance is satisfied in the instant case. First, such evidence may be admitted where the conduct involves the defendant as a participant. Second, such evidence may be admitted where an issue exists as to the origin of semen, pregnancy or disease, and the victim's sexual conduct is probative on that issue. Section 45-5-511(2), MCA.

In State v. Fitzgerald (1989), 238 Mont. 261, 263, 776 P.2d 1222, 1223, the defendant wanted to present testimony that the victim was a prostitute. Fitzgerald argued that he and the victim acted consensually and that the victim fabricated the rape story so that she would not have to face her pimp with no earnings for the evening. The district court refused to allow this line of questioning and we affirmed. Fitzgerald, 776 P.2d at 1223. Like Johns in the present case, Fitzgerald asserted that this line of questioning was relevant to the victim's veracity and essential to his right of confrontation. This Court, however, has repeatedly rejected this assertion. State v. Higley (1980), 190 Mont. 412, 422-23, 621 P.2d 1043, 1050. In Higley we stated that "rules limiting inquiry into sexual conduct of the victim are essential to preserve the integrity of the trial and to prevent it from becoming a trial of the victim." Higley, 621 P.2d at 1050-51. This Court has consistently upheld the exclusion of prior sexual conduct evidence rejecting claims that the Sixth Amendment of the United States Constitution and Article II, § 24 of the Montana

6

Constitution guarantee the defendant the right to introduce such evidence. Howell, 839 P.2d at 91; Hisley, 623 P.2d at 1050. We have held that the Sixth Amendment right of confrontation is not absolute and that the Rape Shield Law serves a compelling state interest in preventing rape trials from becoming trials on the prior sexual conduct of the victims. Howell, 839 P.2d at 91; Fitzgerald, 776 P.2d at 1223-24. In balancing the rights of victims and the rights of the defendant we have stated that:

> "The Sixth Amendment is not absolute, and 'may bow to accommodate other legitimate interests in the criminal trial process.' [Chambers v. Mississippi (1973), 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309.] The rape shield statute has been upheld as a legitimate interest justifying curtailment of the constitutional right to confront witnesses."

State v. Steffes (1994), 269 Mont. 214, 230, 887 P.2d 1196, 1206 (quoting Howell, 839 P.2d at 91).

Although the testimony outlined in issues (a) through (c) all relates to victim L.A.'s sexual conduct on the date of the alleged incident, none of it involves defendant Johns as a participant nor is there an issue relating to semen, pregnancy or disease. In this case, as in Fitzgerald, "neither of the two statutory exceptions applies ." Fitzgerald, 776 P.2d 1223. Accordingly, we conclude that the District Court abused its discretion in finding the evidence referred to in issues (a) through (c) to be admissible. The testimony is inadmissible under § 45-5-511(2), MCA.

The testimony outlined in issues (d) and (e) relates to incidents that occurred on dates prior to the dates of the alleged

7

incidents. Specifically, the testimony relates to L.A.'s conduct while in high school. The State asserts, and we agree, that this testimony also violates § 45-5-511(2), MCA. The District Court determined that the testimony of Brian Mothershead, a high school classmate of L.A.'s, would be admissible if based on his personal knowledge and that the testimony of Shannon Sims, another classmate, would also be admitted. As in issues (a) through (c), Mothershead's and Sims' testimony would not relate to events in which defendant Johns was a participant nor would it relate to semen, pregnancy or disease. Rather, it relates to alleged prior sexual acts which tend to impugn L.A.'s reputation. This is precisely the type of testimony that the Rape Shield Law was designed to prohibit. Fitzgerald, 776 P.2d at 1224; Higley, 621 P.2d at 1050-51. The victim's prior sexual conduct is not on trial. Thus, we conclude that the District Court abused its discretion in determining that this testimony would be admissible.

In issue (f), the State requests that this Court review the District Court's decision to allow the testimony of Daryl and Jean Toews The Toews would testify that K.C. had made and recanted false allegations of sexual assault against her former husband, Chad Reddig. Again, the State asserts that this testimony would violate § 45-5-511(2), MCA. Johns responds that the testimony should be allowed based on this Court's opinion in State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193. In Anderson, we stated that:

> [E]vidence of prior false accusations of the same sexual crime involved in a more current case, while not

8

> admissible for the purpose of impeaching the general character or reputation of the witness, may be admissible if probative of the witness' state of mind, motive, or biases with respect to making the more current accusations.

Anderson, 686 P.2d at 199 (citing People v. Hurlburt (Cal. Ct. App. 1959), 333 P.2d 82, 87). In Anderson, we recognized that most jurisdictions have determined that "evidence of prior false charges may often be probative of the complaining witness' specific reputation for untruthfulness." Anderson, 686 P.2d at 199 (surveying other jurisdictions and collecting cases). We determined that "evidence of similar sexual offenses claimed to have been committed against the victim by other individuals is admissible *if the offenses were proven or admitted to be false."* Anderson, 686 P.2d at 200. The offered evidence must be "narrowed to the issue of the complaining witness' veracity." Anderson, 686 P.2d at 200 (citing Hall v. State (Ind. Ct. App. 1978), 374 N.E.2d 62). In addition, we cautioned that:

> If the charges are true or reasonably true, then evidence of the charges is inadmissible, mainly because of its prejudicial effect [citation omitted] but certainly because of its irrelevance to the instant proceeding. [Citations omitted.] Furthermore, evidence of prior charges which have not been adjudicated to be true or false; i.e., which may be true or false is also inadmissible, primarily because its introduction circumvents the interest in preserving the integrity of the trial and preventing it from becoming a trial of the victim.

Anderson, 686 P.2d at 200. In Anderson, we directed that a separate hearing outside the jury's presence should be held in order to establish whether there was sufficient support for the contention that the prior allegations were false. Anderson, 686

P.2d at 200 **(citing** People v. Sheperd (Colo. Ct. App. 1976), 551 P.2d 210, 212). In _Anderson,_ such a hearing had been held in the district court and we determined that the court did not err in excluding the evidence. We noted that the charges had never been tested for their truth or falsity and were still disputed at the **time** of trial. _Anderson,_ 686 P.2d at 200.

Contrary to Justice Nelson's concurring and dissenting opinion, we have not expanded our prior holding in _Anderson._ The dissent argues that, under _Anderson,_ in order to be admissible in the present proceeding, prior charges **must** have been actually filed against another person **as a result** of the **victim's** accusations and, secondly, that there must have been, separate and distinct from the present proceeding, a prior adjudication that the charges were false. As to the first prong, an actual filing of charges, although _Anderson_ involved a situation where actual charges had been filed and later dismissed, the opinion does not state that such an actual filing is a prerequisite to admissibility. As to a requirement of a prior adjudication in a separate proceeding, _Anderson_ clearly does not require this. Rather, _Anderson_ requires that the district court conduct a hearing outside the presence of the jury to determine whether there is sufficient evidence to support the contention that the allegation was false. Such an in camera determination of falsity satisfies the "adjudication" requirement in the absence of a prior adjudication in a separate proceeding. In _Anderson,_ the district court determined that there was not sufficient support to make a determination of falsity.

10

Thus, it refused to allow evidence of the alleged false accusation and the issue did not go to the jury. However, if the district court, in its in camera hearing, had determined that the prior charges were false, Anderson envisions that the matter would then have been presented to the jury for its judgment. The present case, in which the District Court determined that the prior accusation was false, is a variation of the process contemplated by this Court in Anderson.

In Anderson, we recognized that "limiting or barring a defendant's cross-examination of a complaining witness in a sex crime case where there is evidence of prior false accusations restricts defendant's enjoyment of the worth of his constitutional rights to confront witnesses." Anderson, 686 P.2d at 200 (citing Hughes v. Raines (9th Cir. 1981), 641 F.2d 790, 792; State v. Corella (Haw. Ct. App. 1995), 900 P.2d 1322, 1327-28. Thus, if this Court were to adopt the approach suggested by Justice Nelson's concurring and dissenting opinion, without citation to any authority, and approve of such a restriction on cross-examination of a complaining witness, we would arguably infringe upon the defendant's Sixth Amendment right to confront witnesses. See Hughes, 641 F.2d at 792.

In Anderson this Court did not set forth any procedure to govern the in camera hearing or the presentation of "prior false accusation" evidence to a jury. We take this opportunity to do so. In Miller v. State (Nev. 1989), 779 P.2d 87, 90, the Nevada Supreme Court was confronted with a question as to the admissibility of

11

evidence relating to the complaining witness' allegations of prior sexual assault and sexual abuse which the defendant asserted were false. The Nevada Supreme Court determined that "a threshold inquiry must establish both the fact of the accusations and the falsity thereof even before defense counsel launches into cross-examination." Miller, 779 P.2d at 90 (citation omitted). Accordingly, the Nevada Supreme Court outlined the following procedure that must be followed if a defendant in a sexual assault case proposes to cross-examine the complaining witness about prior and allegedly false accusations of sexual abuse or assault and to introduce corroborative evidence. First, prior to such questioning, counsel must file written notice of his intent. Then, as this Court recognized in Anderson, the trial court must order a hearing outside the presence of the jury to determine the propriety of such questioning and the admissibility of the corroborative evidence. The Nevada Supreme Court directed that:

> In making such a determination, the defendant must establish, by a preponderance of the evidence, that (1) the accusation or accusations were in fact made; (2) that the accusation or accusations were in fact false; and (3) that the evidence is more probative than prejudicial. [Citation omitted.] If the defendant satisfies these three conditions, the trial court will authorize cross-examination of the complaining witness concerning the alleged false accusations. The defendant may thereafter present extrinsic evidence of the false accusations only if the complaining witness denies or fails to recall having made such accusations.

Miller, 779 P.2d at 90. The foregoing analysis is consistent with this Court's holdings in both Anderson and Higley in that it seeks to prevent the trial from becoming a trial of the victim. Accordingly, we adopt the reasoning and procedures of the Nevada

12

Supreme Court as set forth in Miller.

In the instant case, the District Court held a hearing outside the presence of the jury and determined, first, that K.C. had made accusations of rape and, second, that K.C.'s prior allegations of rape against Reddig were false. The court stated that "[b]ased on the testimony of Mr. and Mrs. Toews and Arthur Gray, the Court finds that there were false allegations made by [K.C.] against Chad Reddig and Brian Miller, and testimony regarding those allegations is admissible at the trial of this case." The District Court did not determine, however, whether the proffered evidence would be more probative than prejudicial as the third prong of the test we now adopt requires. Accordingly, we remand this case to the District Court for this determination. If the District Court determines that the evidence is more probative than prejudicial, as the court recognized in Miller, extrinsic evidence of the false accusations may be presented only if the complaining witness denies or fails to recall having made such accusations. Miller, 779 P.2d at 90.

As we recognized in Anderson, this type of evidence has the potential to transform the trial from a trial of the defendant for specific criminal acts into a trial of the victim or victims. Accordingly, such evidence of prior sexual assault allegations adjudicated to be false or admitted to be false must be narrowed to the issue of the complaining witness' veracity. Anderson, 686 P.2d at 200 (citing Hall, 374 N.E.2d at 65).

The orders of the District Court dated November 27. 1995 and

13

December 7, 1995, holding the testimony described in issues (a) through (e) to be admissible are reversed, while the decision of the District Court holding the testimony described in issue (f) to be admissible is remanded with direction to determine whether the proffered evidence is more probative than prejudicial. This case is remanded to the District Court for proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice James C. Nelson specially concurs and dissents.

I concur with all that is said and in our decision on issues (a) through (e). I dissent from our decision on issue (f), regarding the allegations of sexual intercourse without consent made by K.C. against her former husband, Chad Reddig.

At the outset, given the specific provisions of Montana's Rape Shield Statute, § 45-5-511(2) and (3), MCA, and the very narrow limitations under which evidence concerning sexual conduct of the victim is admissible, none of which are at issue here, I have serious reservations about the correctness of our decision in State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193.

That case stands presently as the law of Montana, however, and having expressed my initial concern, I nonetheless, believe that we have misapplied the rule in Anderson. My disagreement with our decision in the instant case flows from what I view is an expansion of the sort of evidence that is admissible under the Anderson rationale.

In Anderson, prior to the incident there at issue, the victim made accusations of unlawful sexual conduct against an individual (Bratcher) and, as a result, criminal charges were actually brought against that individual. The criminal charges were dismissed without any actual adjudication of the truth or falsity of the accusations. However, the allegations underlying those charges were still disputed by Bratcher at the time of Anderson's trial. Anderson, 686 P.2d at 200. Moreover, we pointed out that Anderson's offer to have Bratcher's attorney testify that Bratcher

15

had denied the charges was irrelevant because the attorney's testimony was inadmissible on the ground that mere denial does not establish falsity and because the testimony would have been inadmissible hearsay under Rule 801(c) and 802, M.R.Evid. Anderson, 686 P.2d at 200. We concluded,

> In short, the offered evidence would not have been probative of R.F.'s inclination for truthfulness or untruthfulness, as maintainedby defendant, but certainly would have placed a prejudicial stamp on her general character and reputation [and that this] . . irrelevant, prejudicial evidence would have shifted the focus of trial away from its central purpose and thus had to be barred.

Anderson, 686 P.2d at 201.

In the instant case, the offered evidence is even more tenuous. Here, no criminal charges were filed against K.C.'s former husband as a result of K.C.'s allegations of non-consensual sexual intercourse. It does not appear that she even made these allegations to the authorities, but rather that she made her statements to acquaintances. K.C.'s former husband, Reddig, disputed K.C.'s allegations, but his mere denial does not establish falsity. Anderson, 686 P.2d at 200. K.C. maintained that the accusations were accurate, and the actual truth or falsity of those allegations--which never even rose to the level of criminal charges --was at no time adjudicated prior to the instant proceedings. It appears from the briefs that the evidence at the in camera hearing basically involved a swearing match between K.C. and the Toews, who claimed she had recanted the accusations against Reddig.

In my view, our requirement in Anderson that, to be admissible, evidence of prior charges must have been adjudicated to

be true or false, contemplates first, that criminal charges were actually filed on a prior occasion against someone other than the defendant in the proceeding then at issue on the basis of the victim's accusations, and second, that there was an adjudication on the merits of those charges that ended in a final judgment or verdict that the charges were false. Proof of the false accusations must then still be shown to be probative of the state of mind, motive or biases respecting the victim's current allegations--not simply as a general attack on her character, and, in addition, such evidence must be more probative than prejudicial.

The *in* camera hearing referred to in <u>Anderson</u> and now required as a result of our decision here should be limited to the factual and legal determinations discussed in the preceding paragraph. To allow, as we have here, the merits of the victim's prior, disputed accusations to be "adjudicated," in a *summary in camera* hearing, as part of an unrelated criminal trial, for the sole purpose of allowing the defendant to offer testimony impeaching the victim's current testimony, accomplishes in spades exactly what the Rape Shield Statute and our decisions in <u>Higley, Anderson</u> and their progeny sought to avoid--a trial of the victim within the trial of the current defendant.

Indeed, here, in addition to the court's in camera "adjudication" there will be a second "trial within a trial." I assume that our opinion does not permit the trial judge to instruct the jury that he has found the victim's prior accusations to be false. Accordingly, when those prior accusations are brought into

17

the current trial in the context of the victim, on cross-examination, admitting she made the accusations, that they were true and that she did not recant and the Toews then testifying that she did recant, the jury will have to "adjudicate" the truth or falsity of the prior accusations a second time in another mini-trial of the victim's character and credibility. This procedure not only flies directly in the face of the prior "adjudication" requirement of Anderson, (we have never held that the current trial jury is allowed to decide the truth or falsity of the prior charges), but, obviously, this procedure also shifts the focus of the jury away' from the merits of the current charges against the defendant--again contrary to the purpose of the Rape Shield Statute and rulings under our prior case law.

Contrary to the implication in the opinion of the Court, the *in* camera hearing in Anderson did *not* adjudicate the merits of the prior charges which the complaining witness had made against Bratcher. Rather, the hearing in that case went simply to the reasons *why* such charges had not been adjudicated to be true or false in a previous trial on the merits. Because the testimony at the Anderson *in* camera hearing demonstrated that the prior accusations had not been *proven false or admitted to be false,* (as opposed to whether the charges were true or false), we concluded that the trial court properly rejected Anderson's attempts in his trial to prove the falsity of the prior charges and that the court properly excluded evidence of the victim's prior accusations. Anderson, *686* P.2d at 201. The approach which I have suggested

18

here is precisely the same. The majority's statements to the contrary, <u>Anderson</u> did **not sanction a trial of merits of the** victim's prior accusations within the trial of her allegations against the current defendant. That case stands for a much narrower procedure than we have adopted here.

While the defendant's Sixth Amendment right of confrontation is an important one, we have also been careful to balance that right against those of the victim and have held that

> [t]he Sixth Amendment is not absolute, and "may bow to accommodate other legitimate interests in the criminal trial process."

State v. Steffes (1994), 269 Mont. 214, 230, 887 P.2d 1196, 1206, (citing State v. Howell (1992), 254 Mont. 438, 445-46, 839 P.2d 87, 91.) See also State v. Stuit (1994), 268 Mont. 176, 183, 885 P.2d 1290, 1295 (collecting cases). I fail to see how this defendant's "enjoyment of the worth of his constitutional right to confront witnesses" is restricted by requiring in the instant case the same sort of narrow, balanced approach that we approved in <u>Anderson.</u>

In Hughes v. Raines (9th Cir. 1981), 641 F.2d 790, the defendant asserted that his right to confrontation was denied when the trial court precluded him from questioning the complaining witness regarding an attempted rape accusation she had previously made against another person. The Ninth Circuit Court of Appeals, stating that the right to confront witnesses is not unlimited, concluded that the object of the intended cross examination in Hughes was not to establish bias against the defendant, but was merely to attack the general credibility of the witness on the

19

basis of an unrelated prior incident. <u>Huahes</u>, 641 F.2d at 793. Thus, the Court of Appeals held that the trial court's limitation of **cross examination** on this issue was not a violation of the defendant's confrontation rights.

The same result should obtain here, given that the defendant has failed to demonstrate, and the majority has failed to explain, how exactly K.C.'s prior allegations against her former husband are probative of her state of mind, motive or biases in making her current accusations. <u>Anderson,</u> 686 P.2d at 201. Purely and simply, and contrary to <u>Hughes,</u> we are allowing the defendant here to attack K.C.'s character and credibility on the basis of mere prior accusations that remain disputed.

Finally, it is not subject to serious dispute that many rapes presently go unreported and unprosecuted (especially on college campuses) simply because the victims of those assaults fear being victimized a second time by the criminal justice system. For that reason, Montana's Rape Shield Law and, until now, our cases have very narrowly limited the circumstances under which inquiry may be made of the victim regarding sexual matters not involving the current accused. Our decision here is supported by neither source of authority and is, decidedly, a giant step backward to a time when we instructed juries that, where consent is at issue, "the charge of rape is easily made and difficult to refute" and requiring the rape victim's testimony to be viewed with caution. See State v. Smith (1980), 187 Mont. 245, 609 P.2d 696 (holding that the trial court committed reversible error in failing to so

instruct) and State v. Liddell (1984), 211 Mont. 180, 685 P.2d 918, (overruling   Smith).

I would hold that evidence of K.C.'s prior accusations against Reddig is inadmissible, and I dissent from our failure to do so.

_____
                                Justice

Justice Karla M. Gray concurs in the foregoing special concurrence and   dissent.

_____
                                Justice

Justice Terry N. Trieweiler, dissenting and concurring.

I dissent from this Court's order dated April 9, 1996, in which it granted the State's application for supervisory control, but denied the cross-petition filed on behalf of the defendant, Michael Paul Johns.  The defendant's cross-petition raised significant issues which could be dispositive of the charges against him, or at least significantly affect the outcome of his trial.  Because the Court has declined to accept supervisory control to decide these issues, prolonged and expensive litigation will result which, based on representations of the parties, will substantially exhaust the life-time savings of the defendant's family.  Under these circumstances, treatment of these issues by appeal following trial is not an adequate remedy.

I concur with the majority's decision to reverse the District Court and exclude evidentiary items (d) and (e)

I specially concur with the majority's decision regarding evidentiary item (f) which relates to past allegations of sexual assault made by K.C.  However, I do not agree that the testimony relates to sexual conduct of the victim, and therefore, do not concur with all of the majority's discussion of that issue.

I dissent from that part of the majority opinion which would exclude that evidence referred to in paragraphs (a), (b), and (c). I conclude that those acts are admissible pursuant to the transaction rule found at § 26-I-103, MCA, and that to exclude them violates constitutional rights of confrontation guaranteed by the

22

Sixth Amendment of the United States Constitution, and **Article** II, Section 24, of the Montana Constitution

In *State v. Wing* (1994), 264 Mont. 215, 870 P.2d 1368, defendants were charged with sexual intercourse without consent based on conduct that occurred at a party where several other persons were present. Following the acts which formed the bases for the charges against the defendants, three other persons allegedly engaged in nonconsensual sexual intercourse with the victim. At trial, the district court allowed the victim to testify about not only the acts committed by the defendants, but also those acts committed by the other three people. Defendants contended on appeal that the evidence of other acts should have been excluded because it was not related to their conduct and its probative value was outweighed by its prejudicial effect. This Court, however, held that the evidence was part of a single transaction which was admissible to explain the circumstances surrounding the charged offenses. We stated that:

> The concepts embraced by the term *res gestae* are included within the codification of that common law doctrine in § 26-1-103, MCA, also referred to as the "transaction" rule, which provides as follows:
>
>> 26-1-103. Declaration, act, or omission which is a part of the transaction. Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction.
>
> Whether an act is referred to as part of the *res gestae* or as part of the "transaction," that act is evidence which is part of the same litigated event.

23

For example, it is well established that evidence which tends to explain circumstances surrounding the charged offense is relevant, probative and competent. When the court is not dealing with the introduction of evidence of wholly independent or unrelated crimes, the evidence is properly admitted. *State v. Cameron* (1992), 255 Mont. 14, 20, 839 P.2d 1281, 1285. In *Cameron,* we also pointed out that evidence may be admissible if it is closely related to and explanatory of the offense. *Cameron,* 839 P.2d at 1287. See also *state v.* Riley (1982), 199 Mont. 413, 426, 659 P.2d 1273, 1279.

To be admissible, evidence must be relevant, competent and material. These concepts of admissibility are included in Rules 401 and 402, M.R.Evid., relating to relevancy. Generally, evidence is relevant if it logically and naturally tends to establish a fact in issue. *State v. Smith* (1986), 220 Mont. 364, 376, 715 P.2d 1301, 1308.

[A]dmissibility is predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which the criminal act occurred. Acts of a defendant subsequent to the alleged commission of the crime, and intertwined therewith, are highly probative. (Citation omitted.)

*State v. Moore* (1992), 254 Mont. 241, 246, 836 P.2d 604, 607

We conclude that the victim's testimonial evidence about the sexual acts committed by Gary Wing and Scott and Mike Sheehan was admissible as part of the transaction and as such, the District Court did not abuse its discretion by admitting it because such testimony was relevant according to Rule 402, M.R.Evid., which provides that "[a]ll relevant evidence is admissible."

*Wing,* 264 Mont. at 224-25, 870 P.2d at 1374.

In this case, Johns admits that he engaged in sexual acts with L.A., but contends that she consented to those acts. Evidentiary items (a), (b), and (c), which relate to L.A.'s conduct immediately before and immediately after her encounter with Johns, were as probative and relevant to the issue of her consent, as was the

24

evidence we found admissible in *Wing*. If the jury had a right to hear what "transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which the criminal act occurred" in Wing, why is similar evidence less helpful to the jury in this case?

Because we have, in the past, held that conduct which is part of the same transaction is helpful to explain circumstances surrounding the charged offense, and therefore, relevant, probative, and competent, I conclude that arbitrarily excluding such evidence based on a legislative decision denies the defendant the right to fully and fairly confront and cross-examine his accuser in violation of the Sixth Amendment of the United States Constitution, and Article II, Section 24, of the Montana Constitution.

For these reasons, I would affirm the District Court's order which admitted that evidence pertaining to L.A.'s conduct immediately before and after her encounter with Johns. I dissent from that part of the majority opinion which holds otherwise.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissent and concurrence of Justice Terry N. Trieweiler.

_____
Justice

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States        prepaid, to the following named:

JOSEPH P. MAZUREK, Attorney General
Chris Tweeten, Deputy A.G.
21.5 N. Sanders, Justice Building
Helena, MT 59620

KAREN S. TOWNSEND
Deputy Missoula County Attorney
200 West Broadway, Courthouse
Missoula, MT 59802

MICHAEL J. SHERWOOD
Attorney at Law
P.O. Box 8358
Missoula, MT 59807

ED SMITH
CLERK OF THE SUPREMECOURT
STATE OF MONTANA

BY: _A. Gallag._
Deputy